## THE STATE ex rel. FAXON et al., v. OWSLEY.

### Division One, May 14, 1894.

**Elections**: REGISTRATION: RECORDER OF VOTERS: EXPENSES: LOCAL TAXATION: CONSTITUTION. Revised Statutes, 1889, sections 987–1013, (revising and amending the act of March 31, 1883, Laws, p. 38), providing for the registration of voters in cities having a population of more than one hundred thousand, and the appointment by the governor of a recorder of voters for such cities, and the payment of the costs and expenses of registration and election and of the office of recorder of voters equally out of the county and city treasuries, in cities situated within counties, are not unconstitutional as authorizing the levy of a municipal local tax for other than local purposes.

*Quo Warranto.*

WRIT DENIED.

*R. H. Field* for relators.

Section 1011, Revised Statutes, 1889, providing that all the costs and expenses of registration, election and of the office of recorder of voters shall be paid, one-half out of the city treasury and one-half out of the county treasury, is in violation of sections 1, 3, 8, 9 and 10 of article 10 of the state constitution of 1875. By sections 1 and 10 of the constitution, one mode is created for the exercise of the taxing power for state purposes, and another for the exercise of the same power by and for counties, cities and towns. By section 1 the taxing power for state purposes must be exercised by the general assembly, and it can not delegate such power to the municipal subdivisions of the state. *Waterhouse v. Schools*, 9 Bax. 398; *Bolt v. Riordan*, 73 Mich. 520; *State v. Halleck*, 14 Nev. 202; *Livingston Co. v. Weider*, 64 Ill. 427. The imposition of a debt upon a city or county by the legislature is the same thing as imposing a tax. The limitations of the taxing power contained in our constitution are taken almost literally from the constitution of Illinois, and the decisions of that state construing such limitations before we adopted them ought to be of controlling force. *Skrainka v. Allen*, 76 Mo. 384. It has been repeatedly held by the supreme court of Illinois that imposing a debt upon a municipal subdivision of the state is equivalent to imposing a tax against it, and is violative of the limitations on taxation above named. *Lovingstone v. Wider*, 53 Ill. 302; *Livingston Co. v. Weider*, 64 Ill. 427; *Sleight v. People*, 74 Ill. 47; *Williams v. Roberts*, 88 Ill. 22; *Gadis v. Richmond Co.*, 92 Ill. 119; *Hinze v. People*, 92 Ill. 406;

*Cornell v. People,* 107. Ill. 372. It can not be maintained with any degree of fairness to the constitution that the office of recorder of voters is a state office and that the costs and expenses thereof imposed against Kansas City and Jackson county is a state tax and valid as such. Secs. 3 and 9 of Const. How can the cost and expense of the office in question be fairly deemed as intended a state tax and a state expense as for one of the state's officers when he is to be paid not out of the state treasury? If a state officer, and is to be paid by the state, he belongs on what is designated in the constitution as "the civil list." All state revenue must be paid into the state treasury. There would have to be a statute requiring the costs and expenses of the office in question (if it were state revenue) to be paid by the county and city treasuries into the state treasury instead of directly to the defendant, and the defendant, as such a state officer, would have to be paid only upon and after a regular appropriation by the legislature; in other words, he would come in the legislative appropriation for the fifth class "for the payment of the civil list" by the state treasurer, as all other state officers. Article 4, sec. 43, Constitution. I submit that I have shown that the cost and expense of the office in question, and the office itself as created, are interdependent; that the one would not have been created without the other, and such cost and expense as required of Jackson county and Kansas City being unconstitutional, the office itself also, as to both the city and county, falls. *Hinze v. The People,* 92 Ill. 407.

*Trimble & Braley* for respondent.

The office in question is a state office. The constitution commands the general assembly to enact a statute providing for the registration of voters in such cities.

The State ex rel. v. Owsley.

The general assembly, in obedience to that mandate, did pass the statute in question. The governor appoints the officer with the advice and consent of the senate. His duties are to perform functions which the state constitution and the state statute prescribe for state purposes. He is, therefore, a state officer. *Ewing v. Hoblitzelle*, 85 Mo. 64-77. If the office be a state office, created for state purposes, then the requirement that that the city should pay the officer's salary is the imposition of a debt for *state* purposes and not for city purposes; hence is not hostile to the said section 10, article 10, of the state constitution. *State ex rel. Aull v. Field*, 119 Mo. 593, together with authorities cited.

BRACE, J.—This is a proceeding by the state through the attorney general by way of information in the nature of a *quo warranto*, to oust the respondent from the office of recorder of voters of Kansas City, on the ground that the statute under which he was appointed to said office, and by virtue of which he is exercising its functions, is unconstitutional.

Kansas City is a city of more than one hundred thousand inhabitants. The constitution provides that "The general assembly shall provide, by law, for the registration of all voters in cities and counties having a population of more than one hundred thousand inhabitants, and may provide for such registration in cities having a population exceeding twenty-five thousand inhabitants and not exceeding one hundred thousand but not otherwise." Art. 8, sec. 5. In pursuance of this constitutional provision an act of the legislature was passed, approved March 31, 1883, providing for the registration of voters in, and for the appointment by the governor of a recorder of voters for, such cities. Sess. Acts, 1883, p. 38. This act was revised and amended in 1889. R. S., secs. 987 to 1013, inclusive.

The original act provided that "All the costs and expenses of registration and of the office of recorder of voters required by this act in any such cities shall be paid out of the city treasury of such city." Sec. 25. In the revision, this act was put in chapter 30 of the Revised Statutes entitled "Cities, Town and Villages," and in article 2 of that chapter, entitled "Cities of the First Class," introduced by a new section, providing that "In all cities of the first class *and all cities whose population entitles them to become cities of the first class*, there shall be a registration of all the qualified voters, and the registration of the voters and the conduct of the elections held in such cities shall be governed by the following provisions, subject to the general law concerning elections." R. S. 1889, sec. 987.

And section 25 of the original act was so amended as to read as follows: "All the costs and expenses of registration and election, and of the office of recorder of voters, required by this article in any such cities, shall be paid one-half out of the city treasury and one-half out of the county treasury, except in cities not within a county, in which cities all shall be paid out of the city treasury * * *." R. S. 1889, sec. 1011.

By virtue of an election held on the ninth of April, 1889, under the provisions of section 16, article 9, of the constitution, on the ninth of May thereafter the city of Kansas framed a charter for its own government "in harmony with, and subject to, the constitution and laws of the state;" and is subject to the provisions of said act of 1883, amended as aforesaid, and the respondent is exercising the functions of the office of recorder of voters under said statute by virtue of the appointment of the governor by and with the advice and consent of the senate as therein provided.

The act of 1883, soon after its passage, came before this court for consideration in the case of *Ewing v.*

*Hoblitzelle*, 85 Mo. 64, in which its constitutionality was brought in question, and in which its constitutionality was sustained in the following terms: "The act in question, as we have seen, provides for the registration of voters in cities having more than one hundred thousand inhabitants, and the power to pass such a law is not only directly conferred by section 5, article 8, of the constitution, but the general assembly is expressly required and commanded to pass such a law; and in exercising the power thus conferred, and the duty thus enjoined, the legislature might, as it did, incorporate in the law such provisions as to make its exercise effectual for the purpose intended to be accomplished; and as such registration could not be accomplished without the designation of some officer upon whom the duty of making it is imposed, the power of the legislature to create the office, designate the officer, prescribe his duties, and provide for his appointment or election is necessarily implied from and included in the power expressly conferred to provide such registration. The legislature, being thus empowered, had the right to include in the act for the registration of voters any subject naturally or necessarily connected with it or flowing from it as incident thereto."

In view of the ruling in that case and in the subsequent one of *State ex rel. v. Dolan*, 93 Mo. 467, and the fact that registration under this act was in force and its provisions conformed to at all elections held in Kansas City for years prior to, and at, the time its citizens framed the charter of 1889, in which they embodied a compliance with its requirements as a necessary qualification for all voters at elections therein held (Charter, art. 1, sec. 8; art. 17, secs. 27, 39; art. 17, sec. 141) we deem it unnecessary to review the argument of counsel, questioning the power of the legislature to pass the act, so far as its general scope

and purpose is concerned; or to make any observations on the claim of relators, citizens of Kansas City, that it is obnoxious to the principle of local self government which it is said pervades the constitution—and come to the real question at issue and which has not been hitherto directly passed upon by this court. The relators contend that section 1011, *supra*, which requires that all the costs and expenses of registration and elections, and of the office of recorder of voters, shall be paid out of the city and county treasuries is obnoxious to the provisions of sections 1, 3, 8, 9 and 10, article 10, of the constitution, and that that section of the act being unconstitutional and void, the other provisions of the act are so intimately connected with and dependent upon it as to render the act incapable of enforcement without it, and consequently the whole act is void.

The constitutional provisions aforesaid are as follows:

"Sec. 1. The taxing power may be exercised by the general assembly for state purposes, and by counties and other municipal corporations, under authority granted to them by the general assembly, for county and other corporate purposes."

"Sec. 3. Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws."

"Sec. 8. The state tax on property, exclusive of the tax necessary to pay the bonded debt of the state, shall not exceed twenty cents on the hundred dollars valuation; and whenever the taxable property of the state shall amount to nine hundred million dollars, the rate shall not exceed fifteen cents.

"Sec. 9. No county, city, town, or other munic-

ipal corporation, nor the inhabitants thereof, nor the property therein, shall be released or discharged from their or its proportionate share of taxes to be levied for state purposes * * *.

"Sec. 10. The general assembly shall not impose taxes upon counties, cities, towns or other municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

These provisions of the constitution of 1875, are followed in subsequent sections by limitations upon the rates that may be levied for local purposes. The crying evil that the people of the state were laboring under at the time these provisions were introduced into the constitution was excessive indebtedness incurred by counties and other municipalities under authority of the legislature, to meet which oppressive taxes had to be imposed, and it was to meet this evil and remove it for the future, that these provisions were introduced into the organic law of the state. It was not sought to deprive the legislature of the taxing power and confer it upon municipalities to any extent. On the contrary the plenary taxing power of the general assembly as it had theretofore been exercised is recognized as a premise of the proposed legislation. It is only the exercise of it by the assembly that is limited and regulated by the constitution. All taxes since the adoption of the present constitution or before are levied and collected under and by the authority of the general assembly of the state.

Under these limitations of the constitution the taxes must be uniform within the territorial limits of the authority levying them, they must be levied in pursuance of a general law of the assembly directly

authorizing them for state purposes, and authorizing them indirectly, through power conferred upon municipal authorities, for local purposes. And in each case the rate of taxation must be within the limit allowed for such purpose. And the general assembly was inhibited from imposing upon municipalities a tax for local purposes, except by a general law authorizing such tax to be imposed by the local authorities, or releasing any municipality from its proportionate share of taxes levied for state purposes. While the constitution clearly points out the mode in which taxes are to be levied for state purposes and for local purposes, and distinctly marks the limit beyond which neither must go, it nowhere undertakes to define what are state purposes and what are local purposes but leaves us to find the boundary line between them in right reason, the legislation of the state, and the adjudication of its courts, as developed in the history of the state at the time of its adoption.

The statute which we are considering does not impose a tax or directly authorize a municipality to impose a tax. What it does do is to require that the expenses of elections held in a municipality shall be paid out of the treasury of the municipality; that is to say, out of taxes levied and collected, or to be levied and collected, by the municipal authorities, under a general law of the assembly authorizing them to levy and collect such taxes for local purposes. And thus it may be said this law authorizes a tax to be levied by the municipal authorities upon the property within the territorial limits of the municipality to pay the expenses of elections held therein. And this must necessarily be a local tax as distinguished from a state tax, since it is levied and collected by the local authorities, only upon the property within the particular municipality, and can be uniform only within the territorial limits of the

municipality by whose authorities it is levied and collected; and, as the constitution prohibits the imposition of such a tax, except by a general law authorizing its levy by such authorities, and for local purposes only.

The essential question of the present inquiry is decided when it is determined whether or not such a tax is for a local purpose within the meaning of the constitution. If the expense of holding elections in any county or city including the expense of registration therefor when required is a local purpose within the meaning of the constitution, for which a tax may be levied by the authorities of the municipality in which the election is held, then the section of the statute under consideration by which the expense of such election and registration is charged upon the funds raised by such municipality by taxes for its local purposes is not unconstitutional.

The distinction between taxes for state purposes and taxes for local purposes, while never defined by direct and positive law, was well understood at the time of the adoption of the constitution from the uniform action of the legislature in levying the former directly by an act of the general assembly, and the latter by the authorities of municipalities under power granted them by acts of the general assembly.

In an ideal republic, the burden of government may be equally imposed upon all in exact proportion to the benefit derived by each, but in actual government this standard has not and probably never will be reached. The best that can be done in this direction is but an approximation. In an effort at such approximation the burdens of government in the shape of taxes, in this state, have ever been apportioned between the state at large and the political and municipal subdivisions thereof by the levy and collection of a general tax for state purposes, in the manner aforesaid and by

the levy and collection of additional taxes for local purposes, in the manner aforesaid, the additional tax imposed upon the locality being supposed to be compensated for by some immediate, peculiar, or, at least, paramount, benefit derived by the citizen of the locality by means thereof, beyond that derived by the citizens of the state generally.

The purposes for which such local taxes have always been imposed are not alone the support of the local government, but the support of many other public burdens, among which may be mentioned maintaining public schools, making and keeping in repair the public roads and bridges, and supporting the poor and insane within such localities, providing courthouses in which the courts of the state may be held, and providing for much of the expense of holding such courts, and of the administration of the general laws of the state, and without descending into particulars, the expense of holding all elections, not only for local but for state and national officers, and for other state purposes has ever been one of the purposes for which such local taxes have been levied and collected. It was so from the beginning of the state government, at the time the constitution of 1875 was adopted, and has so continued to be ever since; and we fail to discover, in the sections of that constitution hereinbefore set out and relied upon in this proceeding, or anywhere else therein, that the levy and collection of a local tax by the local authorities for such a purpose is prohibited, or wherein the statute in question, which charges the expense of holding elections and the necessary registration therefor, which is a mere incident thereof, upon a fund in the local treasury raised by such taxation, is unconstitutional.

We, therefore, again hold, as we have hitherto held, that the statute aforesaid, under which the respondent

was appointed, and is now exercising the functions of recorder of voters of Kansas City, is constitutional and valid, and the writ prayed for is denied. All concur. BARCLAY, J., in the result.