## Kenton Water Company v. City of Covington, et al.

(Decided December 19, 1913).

Appeal from Kenton Circuit Court
(Common Law & Equity Division).

1. Municipal Corporations—Annexation of Territory.—Contracts—Election to Purchase Water Works Plant—What Constitutes.—Under a contract made by a city with a water company to purchase, if it should so elect, the water works plant by which the latter had supplied the inhabitants of a contiguous town with water, should such town be annexed to and made a part of the city, a mere offer by the city of a certain price for such water plant after the annexation of the town to the city, in view of the water company's refusal of the city's offer, did not constitute an election on the part of the city to purchase such water plant; and in the absence of its having made an election to buy same, the city could not be compelled to enter into the arbitration for fixing the purchase price of the water plant, provided for in the contract.

2. Municipal Corporations—Legislative Act as to Municipalities—Compulsory Requirement as to Purchase by a City of a Water Plant in Territory Annexed—Unconstitutional.—So much of the act of the General Assembly, approved March 23, 1910, (page 253, Acts 1910) as seeks to compel a city, annexing a neighboring town, to purchase and pay for a water plant owned and operated therein; and in the event of disagreement as to price to leave the fixing thereof to arbitration, is violative of the provisions of the Constitution of the State, and also the Fourteenth Amendment to the Constitution of the United States; and being void, such act does not interfere with the city's right to extend the pipes and appurtenances of its own water works into the annexed territory, for the purpose of supplying its inhabitants with water.

S. D. ROUSE for appellant.

S. L. BLAKELY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Where, on an appeal, the record is found to contain, as in this case, a carefully written opinion from the judge of the court rendering the judgment appealed from, which fairly indicates the issues of law and fact involved and presents satisfactory reasons and authority in support of such judgment, and this court, upon considering the appeal is convinced of the correctness of the judgment; it may, though such a thing is rarely done, without impropriety adopt and hand down the opinion of the circuit judge and thereby make it its own. That course will be pursued in this instance, the opinion, in the conclusions of which we fully concur, being as follows:

"In this action it is sought by mandamus to compel the defendant to purchase the plaintiff's water plant in former Latonia, now the City of Covington, and to compel the defendant to appoint an arbitrator to fix the price.

"It is also sought to enjoin the defendant from installing a water system in that part of Covington which was formerly Latonia.

"The facts, as disclosed by the petition and the pleadings, which constitute the basis for the first asserted right, are as follows:

"On June 26, 1903, the plaintiff and the town of Latonia entered into a contract by which the plaintiff was to furnish water to said town and its citizens in accordance with the contract until April 5, 1913, and it installed in that town a water system and proceeded to furnish

water under that contract. There is no provision in this contract either binding the town to purchase the water system at any time, or that confers or gives the town any option to purchase, or that relates to the acquisition of the water system during the continuance of the contract or after it expired.

"In furnishing water to Latonia it was anticipated that the plaintiff would purchase the water to be furnished Latonia from the city of Covington and transmit it through a system to be installed by the plaintiff connecting the water system of Covington with Latonia.

"This was done by the plaintiff, and in pursuance of this plaintiff, on April 13, 1903, entered into a contract with the city of Covington, whereby the city of Covington was to furnish the water to be by it provided for the town of Latonia, for a period of twelve years, commencing May 1, 1903. In this contract it was provided:

" 'If at any time during the term of this contract the city of Covington shall annex the town of Latonia, that the Kenton Water Company shall sell to the city of Covignton, if it so elects to purchase, all its property in said town and district, the city to pay therefor such sum of money as the board of arbitration shall fix as its value; the city select one arbitrator, and the Kenton Water Company one, and in case of disagreement, they to select the umpire to act with them, the finding of a majority of said board to be final between the parties.'

"In 1909 the city of Covington annexed the town of Latonia and thereafter the general council of Covington passed a resolution by which it offered to purchase from the plaintiff its water system at the price of $26,331.45, which offer was to remain open for ten days. The offer was not accepted by the plaintiff, but counter propositions were made at a fixed valuation, which were likewise rejected.

"It is now contended that this offer of the city of Covington to purchase the property at the fixed price of $26,331.45 was an election on the part of the city to purchase the property in accordance with the provision of the contract above set out, and binds it to have the price arbitrated and to accept the property at the price fixed.

"The contention is so palpably erroneous as needs but little response to it. It is sufficient to say that no authority cited by the plaintiff sustains such a contention. The language quoted from Dillon in plaintiff's brief relates expressly to cases where the city is either by contract

or statute bound or compelled to purchase at the expiration of the franchise, or in the event of establishing its own water system in the territory. In this case it was purely optional under the contract for the city to purchase the property and have its value fixed by arbitration, and clearly its offer to purchase at a fixed price, which was not accepted, and which was nothing more than an offer to make an entirely different contract, cannot be turned into an acceptance of the option to purchase the plant at a valuation to be fixed in accordance with the terms of the option.

"The right asserted to have the defendant enjoined from installing its own water system in that part of the city which was formerly Latonia, is based upon the following statute, enacted in 1910, and after the annexation of the city of Latonia to the city of Covington, but before the franchise of the plaintiff to furnish water to Latonia had expired.

"The statute is as follows:

" 'In case the city shall secure the franchise for supplying any neighboring town, city or municipality, or in case of the annexation of any neighboring town, city or municipality, and if in such city, town or municipality any water company or person has theretofore laid or constructed water mains, fire-plugs, hydrants, etc., in any such city, town or municipality, for the purpose of supplying the same and its inhabitants with water, then, and in that event, the city obtaining said franchise, or annexing said town, city or municipality, shall be required, before they exercise any franchise therein for supplying water, to purchase all water mains, fire-plugs, hydrants and other attachments belonging to said water companies or person or persons in said city, town or municipality at a price to be agreed upon by the parties, and in the event of a disagreement, the price to be fixed by a board of appraisers consisting of three persons, one to be selected by the city, one to be selected by the water company, and the two so appointed to select the third.'

"If this act is valid it follows that the city of Covington cannot install its water system and exercise its right of furnishing water to former Latonia without first purchasing the water system of the plaintiff in that territory, as this act of the legislature requires this to be done.

"The validity of this act is, however, assailed as being in conflict with subsection 15 of section 59, and of

sections 181, 19 and 242 of the constitution of Kentucky, and of the XIV amendment to the constitution of the United States.

"Section 181 of the constitution provides:

" 'The general assembly shall not impose taxes for the purposes of any county, city, town or other municipality, but may by general laws confer on the proper authorities thereof, respectively, the power to assess and collect such taxes. The general assembly may, by general laws only, provide for the payment of license fees on franchises, stock used for breeding purposes, the various trades, occupations and professions, or a special or excise tax; and may by general laws delegate the power to counties, towns, cities and other municipal corporations, to impose and collect license fees on stock used for breeding purposes, on franchises, trades, occupations, and professions.'

"It is clear that to purchase the water system of the plaintiff requires the levy and assessment of taxes by the city of Covington, and I take it as conceded by counsel for the plaintiff, and at any rate it is well settled by reference to all the authorities, that had this statute undertaken to compel, or had simply directed cities of this class to purchase or acquire private water system within its corporate limits, to be compensated for in the manner provided by this statute, that it would clearly be in conflict with the constitutional provision under consideration, and therefore void. But the point is made that this statute does not compel the city of Covington to purchase its water system, but simply makes the purchase of its water system a condition precedent to the right of the city to establish a water system in a part of the city which has recently been brought within the city limits, leaving it optional with the city whether it will establish a water system in that territory or not, and that the legislature has the power to do that, even though it would in effect require the city to levy and assess a tax to purchase the plaintiff's water system in the event the city should elect to establish its own water system in that territory. To support this contention the plaintiff cites: Dillon on Municipal Corporations, section 132 (5th Ed.); National Water Works Co. v. Kansas City, 62 Fed., 853; Newburyport Water Co. v. Newburyport, 103 Fed., 584; Citizens Gas Light Co. v. Wakefield, 161 Mass., 432.

"In the examination of these cases and others cited, the court finds three classes of cases.

"1. Where a similar provision for the purchase of the water system of a private corporation is provided in a contract between the city and the water company under which the water company exercises its franchise.

"2. Where a similar statute has been enacted and there is no constitutional provision similar to ours.

"3. Where there is a constitutional provision similar to our own and where a similar statute was involved.

"National Water Works Co. v. Kansas City was a case where there was no statute and no question of constitutional limitation involved. In that case the city had bound itself by contract to purchase the private corporation's water system at the expiration of the franchise, and therefore is not pertinent upon the question of legislative control.

"In Newburyport Water Co. v. Newburyport and in Citizens Gas Co. v. Wakefield, there does not appear from the opinion in the case that there was any constitutional provision, such as is involved here, but in the absence of such a provision the validity of a statute similar to the one in question was sustained and in the latter case it did so upon the ground that it was a matter of election with the city and not compulsory, whether or not it should construct its gas works, but that if it did, it must purchase the company's plant as was provided by the statute.

"People v. Common Council of Detroit, 28 Mich., 288, and People v. Chicago, 51 Ill., 17, are not squarely in point, as they involved the question of legislative authority to compel the construction of parks, but they are authority, or at least the first case is authority for the proposition that even in the absence of any constitutional provision restricting the power of the legislature it has not the power to legislate concerning any matter of purely local concern, and held the statute invalid.

"The case of Helena Consolidated Water Co. v. Steele, 20 Mont., 1, is a case exactly similar to the case at bar. In that case there was a constitutional provision similar to ours, and in that case the statute provided that in the event the city established its own water system, it must purchase the system of the company then operating the water works, but leaving it optional with the city whether or not it would establish its own system, and in

that case the statute was held invalid, and in conflict with the constitutional provision.

"In the construction to be given the law as laid down in this latter case it is contended for the plaintiff that in the Montana case the furnishing of water by a city to its citizens was held to have been done by the city in its private capacity, while in Kentucky the same act is held to be a governmental function, and that as the right of legislative control turns upon the first question, as to whether the establishing of a water system by a city is a governmental function or not, that therefore, where it is held to be a governmental function, that the right of legislative control must be admitted.

"I do not find that the distinction mentioned is laid down in the Montana case as the decisive or at all controlling point. In some cases this question of what is done by the city in its private capacity as distinguished from its governmental capacity is made the criterion of the right or absence of the right of governmental control, but even in those cases the accomplishment of a result, in general, is the thing which is held to be governmental, and not the particular means to be used to accomplish it. As an illustration of what is meant, it is clear that the preservation of good order and peace in a city is a matter in which the State is concerned, and even though the State might legislate to the effect that a police department be established and maintained, and even might prescribe the number of police which should be employed, and what their pay should be, and compel the city to levy a tax to maintain it. Or it might prescribe other things essential to be done which fairly could be said to be essential to the ultimate purpose to be achieved, and in which the State is interested, the preservation of good order and peace in the community, but none of the authorities cited, or which the court has examined, hold or intimate that the legislature could provide that a particular piece of property should be purchased at a given price for the purpose of building a police office and direct a levy of a tax to pay for it. Suppose the legislature should by legislation direct an expensive piece of property be purchased and an extravagant building erected, and levying a tax for that purpose upon the city, will it be contended that the legislature has such power simply because the preservation of good order and peace within the city is a governmental function? The extent of legislative control over municipalities extends so far as is essential to accomplish a result in which the State has

an interest in its governmental capacity, but this power does not extend to depriving the municipality of discretion in the means or methods of its accomplishment, or the expense it will incur for that purpose, where such minute or specific control in details or means is not essential to the accomplishment of the result, and which interest in the result constitutes the basis of legislative right of control.

"In the cases cited and examined by both the plaintiff and the defendant, the question was constantly put as to what interest the State had in the doing of the act directed by the legislature to be done, and whether it was a matter of purely local concern was the matter or point upon which the right of the legislative control was made to depend. Suppose the State can be said to have an interest in the matter of supplying the newly annexed territory with water, putting it upon the ground of public health, has it any interest in what particular pipes or property the city shall purchase or utilize to serve that purpose? Even if the shadowy distinctions between governmental and private functions of a city be the turning point in determining the right or absence of right of legislative control, the question is determined, not by whether or not the general purpose to be achieved is governmental or private, but whether or not the particular thing directed by the act of the legislature is one in which the State is interested as essential to the accomplishment of the purpose.

"While the court has discussed this question at some length upon the assumption that the establishment of a water system in a city is a governmental function in which the State may have such an interest as would give it power to compel its maintenance in a city, yet the court is of the opinion that the Court of Appeals of this State, in common with the weight of authority elsewhere, is to the contrary. Board of Councilmen v. Commonwealth, 29 Ky. L. R., 699, and the subsequent cases following it are relied upon by the plaintiff.

"Prior to this case, the Court of Appeals had held in City of Covington v. Commonwealth, 19 Ky. L. R., 105, that an exemption from taxation given to 'public property used for public purposes' was synonymous with an exemption given to 'public property used for governmental purposes,' and then held that a water system of a city was not property used for governmental purposes, and that it was therefore subject to taxation. Subsequently, as will be seen by the opinion in Board

of Councilmen v. Commonwealth, 29 Ky. L. R., 699, the court changed its mind about the exemption for 'public purposes' being the same as an exemption 'for governmental purposes,' and held that the water system was used, not 'for governmental purposes,' but was used for 'public purposes,' and that therefore it was exempt. Now, the reading of these cases will show that the court did not hold in the latter case that a water system of a city was used for 'governmental purposes,' but, on the contrary, it adhered to its former opinion that it was not held or used for 'governmental purposes,' but it held that this was different from 'public purposes,' and that it was held for 'public purposes.' The change of opinion was not as to what property was held for 'governmental purposes,' but to the effect that property used for 'governmental purposes' was not the same as that held for 'public purposes,' and that a water system was not embraced within the latter. This being true, the whole contention of the plaintiff that the matter is subject to legislative control because a water system of a city is used for governmental purposes fails. It has been urged in the briefs by counsel that the effect of this statute being invalid, would be to permit the city to build a system which would render its system of little value, and would eventually compel them to sell to the city for an insignificant sum; on the other hand, it is contended that if it is valid, then the city will be compelled to purchase and pay for a water system wholly inadequate and useless, and which it would be compelled to discard if it purchased it. I take it that the validity of the act can only be measured by the legislative authority to enact it, and not by the effect it may have in any particular case. If the legislature has the power to enact it, then any loss it might impose upon the city must be borne by it, and, upon the other hand, if it had not the power to enact it, any detriment or loss to the plaintiff which might result by reason of the want of such statute or the authority to enact it, must be borne by it, otherwise the courts would be holding the statute valid in some particular instance and invalid in others. With the wisdom of enacting the statute the courts have nothing to do, it being simply a question of legislative power.

"The last proposition involved is this: It is contended by the plaintiff that the authority of a city to construct or maintain a water works or system is purely a matter of legislative grant, and that without such leg-

islative grant it has no authority to construct or maintain a water system, and therefore it is subject to be withdrawn at any time or repealed, qualified or modified; and that either the act of 1910 is the only authority for the city's power to construct a water system, or if it had power to do so by prior legislative grant, that it was repealed by the act of 1910, and that as the city therefore has no authority to construct or maintain the water system proposed, an injunction should go against it to prevent it, even though the provision relative to the purchase of its plant be invalid. At the time of the enactment of the statute in 1910, and for many years prior thereto, the city of Covington had legislative authority to construct and maintain a water system, which authority was given by subsection 4, section 3058, Kentucky Statutes. If it be contended that this authority was limited to such territory as was then embraced within its boundaries, and not applicable to such as might thereafter be brought within it, it seems to the court that it is so palpably groundless as not to require any citation of authority. In fact, the court feels so certain about it that it has not examined any authority upon the subject, as none has been cited by the plaintiff.

"There is no authority for the contention to the effect that the power of a municipality to construct and maintain a water system must come by way of legislative grant. There is also authority for the position that the doing of whatever is essential to promote the public health is inherent in the municipality. I have not found any authority in Kentucky which has decided the question, and the opinion in the case of Board of Councilmen v. Commonwealth, 29 R., relative to the relation existing between a water system and the public health throws some doubt upon whether the power is only to be obtained by legislative grant. However, the court is of opinion that that is immaterial here. Conceding that the power must be found in a legislative grant, it existed by legislative enactment at and prior to the act in question, and the question resolved itself into whether the provision of the act of 1910 prohibiting the exercise of that power in a given territory within the city except upon the condition that it purchase such water system then in use, had the effect of repealing the former legislative grant, where the condition attached was one which by express provision of the constitution it was prohibited from enacting.

"I have not the slightest doubt that the legislature has the power to attach as a condition to the exercise of a power granted any condition which is not denied it by the constitution to make, not of its power to restrict a power already granted by such condition.

"On the other hand, where the constitution has by express provision denied the legislature the right to require a particular thing to be done, or to legislate upon a particular subject or in a particular way, then the legislature cannot by indirection require it to be done by attaching it as a condition to the exercise of some power which it has granted, and which is essential to the public welfare that it be exercised. To do this would be to permit the constitutional provision to be indirectly violated, and render it a nullity, for, in order to accomplish or put in force any legislation which it had been denied the power to enact, all it would require would be to attach it as a condition to the exercise of a power which it had granted, and which was necessarily essential should be exercised for the public good. The legislature had no power to require municipalities to purchase water systems within its boundary which would require the assessment and levy of a tax.

"It is perfectly apparent that the purpose of this act was not to repeal the power granted to the city to maintain a water system within its boundary, or in any part of it, and except upon the assumption that it might render enforceable the provision requiring the city to purchase the plant of water companies, would never have been enacted. That the legislature did not regard the establishment of a water system in this territory as a thing to be prohibited, is evidenced by the fact that it permitted it, conditioned only upon a condition which it had no authority or power to make, and which had expressly been denied it. The act in that particular is therefore void, and the provision prohibiting the city from establishing a water system in the territory except upon this illegal condition cannot be held to have repealed the power formerly granted, which granted the city the power to construct and maintain a water system anywhere within its boundaries. Having reached this conclusion, it is unnecessary to consider the other objections urged as to the validity of the act."

Judgment affirmed. Whole court sitting.