# Covington Bridge Commission et al. v. City of Covington.

(Decided Dec. 18, 1934.)

814

ROBERT C. SIMMONS for appellants.

STEPHENS L. BLAKELY for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

We are required to determine the constitutionality of an Act approved March 14, 1932 (Acts 1932, c. 160, p. 726), entitled:

"An act enabling cities of the Second Class to acquire, construct, improve, operate and maintain bridges across navigable streams, and to acquire and operate ferries thereover, so as to connect such cities with an adjoining State; providing for the creation of bridge commissions of such cities and prescribing their powers and duties; authorizing the issuance of revenue bonds of such cities, payable solely from bridge and ferry earnings, to pay the cost of such bridge and ferry tolls for the payment of such bonds and for the cost of maintenance, operation and repair of the bridges and ferries; setting forth the conditions upon which such bridges shall become free bridges; providing that no debt of such cities shall be incurred in the exercise of any of the powers granted by this Act; providing for condemnation."

The act comprises 24 sections. Section 22 expressly provides:

"This Act shall be deemed to provide an additional and alternative method for the doing of the things authorized hereby and shall be regarded as supplementary and additional to powers conferred by other laws."

At the time of its enactment, section 3058-5, Ky. Stat., sections 3235g-1 to 3235g-7, inclusive, and 3235g-8 to 3235g-30, inclusive (Ky. Stat. Supp. 1933, Acts 1932, c. 160), dealing with interstate bridges of second class cities, were the other laws alluded to in secton 22.

The act under review, as its title indicates, created a commission, and section 3 authorized "the Mayor or other chief executive officer of such city, with the approval of the legislative body of the city, [to] appoint four persons who, with the Mayor or other chief executive officer, ex officio, shall constitute the bridge commission of said city." The terms of the commissioners were therein fixed at four years. It provides for the filling of vacancies, and requires the execution, by each member of the commission, a bond of the penal sum of $5,000 for the faithful performance of his duties, to be approved by the legislative body of the city. Section 4 prescribes the organization of the commission. Section 5 prohibits the members of the commission, employing their relatives or having an interest in any contract, and forbids its employees becoming in any way connected with any person, or interested in any firm or corporation, etc. Section 6 confers the authority upon the commission to acquire "by purchase any toll bridge over a navigable stream so as to connect such city with an adjoining state, or any such toll bridge wholly or partly constructed and/or any franchises, easements, permits and/or contracts for the construction of any such bridge, upon such terms and at such prices as may be considered by such bridge commission to be reasonable and can be agreed upon between it and the owner thereof, title thereto to be taken in the name of such city." Section 7 empowers the commission to acquire by condemnation any land, rights, easements, franchises, and other property deemed necessary for the improvement and/or the efficient operation of any property acquired or constructed under this act, including right of way and approaches leading to any such bridge. The title to any of the property condemned by the bridge commission shall be taken in the name of the city without any obligation on the part of the city to accept or pay for any property condemned or any costs incidental to the condemnation proceedings, except from funds received under the provisions of the act. Section 8 imposes the duty on the commission to improve bridges acquired thereunder. Section 9 authorizes the commission to construct bridges as therein provided, and section 10 to remove obstructions, etc. Section 11 expressly empowers the commission to issue revenue bonds, as therein set out, and directs what the bonds shall contain, and when issued, shall contain a state-

ment on their face that the city shall not be obligated to pay the same or the interest thereon, except from the revenues of such bridge. Section 12 requires all moneys received from any bonds issued pursuant to the act shall be applied solely to the payment of the cost of the bridge or to the appurtenant sinking fund, and grants a lien upon such moneys, until so applied, in favor of the holder of the bonds, or the trustee directed to be appointed provided in respect to the bonds under the act. Section 13 authorizes the commission in its discretion to issue trust indentures for the purpose specified therein. Section 14 imperatively requires the commission to fix, charge, and collect tolls for transit over the bridge, which shall be used to provide a fund sufficient to pay bonds and the interest thereon, and with which to pay the cost of maintaining, repairing, and operating the bridge, subject, however, to any applicable law or regulation of the United States of America now in force or hereafter to be enacted or made. Section 15 directs, when the bonds issued for any bridge and the interest thereon shall have been paid or a sufficient amount shall have been provided for their payment, the commission shall cease to charge tolls for the use of the bridge, and thereafter it shall be free unless tolls shall be required for maintaining, repairing, and operating the bridge. Section 16 is confined to ''action by trustee and bondholders.'' Section 17 grants the powers of the commission to make an agreement with any adjoining state or any municipality or political subdivision thereof, concerning the money or property necessary to defray the cost of construction, acquisition, operation, or maintenance of any bridge connecting such city with such other state or political subdivision. Section 18 inhibits the bridges and ferries as set forth therein. Section 19 authorizes the acquisition of ferries by the commission. Section 20 elaborately describes the general powers of the commission. And section 21 provides for the dissolution of the bridge commission. When the bonds and interest thereon issued hereunder shall have been paid or fully provided for, the commission shall stand dissolved; ''thereupon the legislative body of such city shall assume the operation, maintenance and repair of any such bridge, and, unless the cost of operation, maintenance and repair shall be otherwise provided for, shall assume the collection of tolls for the payment of

such cost, and shall do any and all other acts and things that may be necessary and convenient for the maintenance of such bridge.''

In accordance with section 3, the mayor, with the approval of the legislative body, appointed Bert J. King, C. N. Heisel, Louis Meyer, and John P. Dunphy members of the bridge commission, who, with the mayor, ex officio, constitute the commission. They qualified by each of them taking, subscribing, and filing an oath of office, and executing bond in the penal sum of $5,000 each for the faithful performance of his duties which was approved by the legislative body and filed with the other official bonds of the city.

This action was brought under the Declaratory Judgment Act (section 639a—1 et seq., Civil Code of Practice), to determine the rights and powers of the city and the bridge commission under the act in connection with a resolution adopted by the city commissioners. The resolution reads:

''(1) That the option heretofore granted by the Covington and Cincinnati Elevated Railroad and Transfer and Bridge Company to the City of Covington to buy the vehicular and pedestrian portion of its bridge across the Ohio River be, and the same is hereby definitely rejected.

''(2) That in judgment of this Board it is against the best interests of the City of Covington to acquire any bridge across the Ohio River or to assume the maintenance thereof, or to forego the city's right to collect taxes from any such bridge under any form of contract.

''(3) The Bridge Commission of the City of Covington is hereby instructed that without further order of this Board, it shall not acquire any bridge on behalf of the City of Covington and it shall not enter into any contract or option to acquire or build or to maintain any such bridge.

''This ordinance shall take effect and be in force, when passed, published and recorded according to law.''

In Klein et al. v. City of Louisville et al., 224 Ky. 624, 6 S. W. (2d) 1104, an act approved February 16, 1928 (chapter 74), conferring the power upon cities of

the first class to acquire or construct an interstate bridge, substantially identical in title, context, provisions, and purpose with the act here under consideration, was declared constitutionally valid.

In Miller v. City of Louisville, 99 S. W. 284, 30 Ky. Law Rep. 664, we reviewed the constitutional validity of an act to enable cities of the first class to construct a comprehensive sewerage system for the disposition of sewerage. It was declared constitutionally valid.

The acts in the Klein and the Miller Cases were attacked in actions brought by taxpayers. It must be noted the present action was instituted by the city against the members of the commission appointed, qualified, and acting in pursuance of the act here assailed.

It is agreed that the act of 1932 is practically identical with the act reviewed in Klein et al. v. City of Louisville et al. The city is here insisting the material distinction between the Klein Case and this one is, in the former, the city of Louisville assumed therein the position the act was constitutional and its validity was questioned, not by the city, but by a taxpayer; while in the present one, the city and not a taxpayer is insisting the act is unconstitutional and that this "gives rise to a distinction which makes our conclusion in the Klein Case wholly inapplicable in the pending case."

Supplementing this argument, it is urged that the Legislature by the act of 1932 was without constitutional authority to divest the city commissioners of any of their powers, and that the bridge commission may only operate if and when the commissioners decide to acquire a bridge; that the act is an attempt upon the part of the Legislature to control a nongovernmental function of the city, and the acquisition, maintenance, and operation of a bridge is a nongovernmental function. It asserts "there is no instance in Kentucky where the legislature has undertaken to create a separate corporation, endow it with powers to bind the city against the will of its legislative body"; and that the act of 1932 so operates, and therefore is invalid.

In Allen for Use and Benefit of Middlesboro v. Hollingsworth, 246 Ky. 812, 56 S. W. (2d) 530, 531, we said:

"Apart from restraints of the organic law, the Legislature has plenary powers in respect to the establishment and regulation of the government of municipalities, and such divisions of government possess only those powers that the state, through the Legislature, has conferred upon them, expressly or impliedly, and those granted powers may be enlarged or diminished in the discretion of the superor body, for the municipalities are derivative creations. Walker v. City of Richmond, 173 Ky. 26, 189 S. W. 1122, Ann. Cas. 1918E, 1084; City of Morganfield v. Wathen, 202 Ky. 641, 261 S. W. 12; Barrow v. Bradley, Mayor, 190 Ky. 480, 227 S. W. 1016. Doubt concerning the existence of a particular power will be resolved against its existence. Board of Education v. Scott, 189 Ky. 225, 224 S. W. 680. The systems of government conferred upon municipalities in this state have been through the enactment of charters for the six classes of municipalities into which cities and towns have been placed. In these charters, powers in respect to many things have been delegated to the legislative bodies of the cities. Bryan v. Voss [143 Ky. 422, 136 S. W. 884], supra; Barrow v. Bradley, Mayor, supra; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460. But those charters are subject to will of the Legislature. Boyd v. Chambers, 78 Ky. 140; City of Owensboro v. Board of Trustees, 210 Ky. 482, 276 S. W. 143."

Again, in Juett v. Town of Williamstown et al., 248 Ky. 235, 58 S. W. (2d) 411, 413, we said:

"Municipal corporations possess only such powers as are expressly given, or necessarily implied, in statutes constitutionally enacted."

And quoting from South Covington & Cinc. St. Ry. Co. v. Berry, Mayor, etc., 93 Ky. 43, 18 S. W. 1026, 13 Ky. Law Rep. 943, 15 L. R. A. 604, 40 Am. St. Rep. 161, we continued:

"The powers of a municipality are confined to those expressly granted, or those essential to the execution of those so granted. They are mere agencies of the sovereign authority of the state, and can therefore exercise no powers except those expressly conferred, or those essential to the accomplishment of the purposes of the incorporation."

In City of Pineville v. Meeks, 254 Ky. 167, 71 S. W. (2d) 33, 35, again we restated these principles and followed it with the pronouncement that "necessarily the power to create a political subdivision and to prescribe the governmental powers and to fix the limits thereof carries with it the right to amend, abridge, or repeal."

The import and essence of these principles are, the state possesses all of the power of sovereignty, except so far as is limited by the Constitution of the United States, and this power may be exercised within and subject to the state's constitutional restrictions.

These restrictions are outlined by Judge Cooley in People v. Hurlbut, 24 Mich. 44, 9 Am. Rep. 103, thus:

> "The state may mould local institutions according to its views of policy or expediency; but local government is matter of absolute right; and the state cannot take it away. It would be the boldest mockery to speak of a city as possessing municipal liberty where the state not only shaped its government, but at discretion sent in its own agents to administer it; or to call that system one of constitutional freedom under which it should be equally admissible to allow the people full control in their local affairs, or no control at all."

We recognized these principles in Lexington v. Thompson, 113 Ky. 540, 68 S. W. 477, 57 L. R. A. 775, 101 Am. St. Rep. 361, and Kenton Water Co. v. Covington, 156 Ky. 569, 161 S. W. 988.

A summary of the stated principles is, in matters purely governmental in character, a municipality is under the absolute control of the Legislature; but, as to its proprietary or private functions, the Legislature is under the same constitutional restraints that are placed upon it in respect to private corporations. See Lexington v. Thompson, supra; Kenton Water Co. v. Covington, supra; City of Covington v. Commonwealth of Kentucky, 107 Ky. 680, 39 S. W. 836, 19 Ky. Law Rep. 105; Combs v. Bonnell, 109 S. W. 898, 33 Ky. Law Rep. 219.

The Constitution of Kentucky does not define what are governmental and what are local purposes of a municipality, but leaves the courts to find the boundary

line between them in right reason, in the light of the legislation of the state and the adjudication of the courts as developed in the history of the state at the time of the Constitution. State ex rel. v. Owsley, 122 Mo. 68, 26 S. W. 659. It is not always easy to determine what subjects are local or municipal and what are not. "The generally understood meaning of the term 'municipal affairs' is affairs relating to, or involved in, the local government of the inhabitants of any locality such as are generally managed and controlled by a local governing administration, illustrated practically every day in and by our county and city councilors consisting of presiding officers and councilors or all of them, in whom are vested both legislative and executive authority in relation to and affecting the local affairs of the locality." Charlotte v. St. Stephens, 32 N. Bruns. 92. "The term 'municipal affairs' is not a fixed quantity, but fluctuates with every change in the conditions upon which it is to operate." Helmer v. Superior Court, 48 Cal. App. 140, 191 P. 1001. McQuillin's Municipal Corporations, vol. 1, sec. 269, p. 685 (2d Ed.), states a summary of principles applicable to legislative control of municipalities. In volume 1, sec. 258, p. 656 (2d Ed.), he writes:

"In those jurisdictions in which the control of public highways, streets, bridges, docks, wharves, levees, and canals is viewed as a matter of general or state concern, as contradistinguished from municipal, the legislature may compel their establishment and maintenance."

State ex rel. v. Williams, 68 Conn. 131, 35 A. 24, 421, 48 L. R. A. 465. An interstate bridge undoubtedly is a matter of state concern.

It is apparent the Legislature, by the adoption of the act of 1932, has not exercised the limit of its constitutional authority over second class cities in respect to the subject-matter embraced in it. It applies to all cities of the second class.

It does not attempt to appoint a bridge commission for the city. And, whether the duties imposed and the powers conferred upon the commission authorized to be created in the manner set forth in it are governmental or proprietary, the commission acting thereunder is an agency solely of the city. Section 160 of

our Constitution names the elective officers of municipalities and secures to the qualified voters residing in the corporate limits thereof the right to elect them, and also contains this clause:

"But other officers of towns or cities shall be elected by the qualified voters therein, or appointed by the local authorities as the general assembly may, by a general law, provide," etc.

The intent of this clause is to preserve the principle of home rule by continuing the right of the municipality to select its own officers to exercise the general functions of the offices. It is a recognized rule that, unless the office or officer is mentioned, eo nomine, in the Constitution, the name may be changed, or the office abolished, provided the functions, if retained at all, continue in some officer chosen by the municipality. The authorities agree without exception that the Legislature has power to regulate, increase, or diminish the duties of a municipal officer, subject, however, to the limitation that the functions conferred upon him by the Constitution, either expressly or impliedly, cannot be transferred to another. An office created by the Constitution cannot be divested by the Legislature of its original and inherent functions. People ex rel. Met. St. Ry. Co. v. Tax Commissioners, 174 N. Y. 417, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674; State v. Myers, 52 Wis. 628, 9 N. W. 777; Jones v. Kolb, 56 Wis. 263, 14 N. W. 177; State v. Alder, 87 Wis. 554, 58 N. W. 1045. The Legislature may create municipal boards, commissions, and offices not mentioned in the Constitution, fix their qualfications, and define their powers and duties, Connell v. State ex rel. Thompson (Ind. Sup.) 144 N. E. 882, and grant to the municipality the authority to elect or appoint the incumbents in such manner as the Legislature sees fit and determine whether they shall be filled by election or appointment by the city and to fill them accordingly. People ex rel. Peterson et al. v. Pollock, 306 Ill. 358, 137 N. E. 820. It may also transfer the power and duties of one office from one body of local officers to another local body, except, as we have indicated, it may not divest an office created by or named in the Constitution of its original and inherent functions. Devoy v. Mayor, etc., 36 N. Y. 449; People v. Pinckney, 32 N. Y. 382; Tone v. Mayor, etc., 70 N. Y. 157; In the Matter of the Petition of

Mary H. Lester to Vacate an Assessment and Sales for an Assessment, etc., 21 Hun (N. Y.) 130.

In Combs, Mayor, etc., et al. v. Bonnell, 109 S. W. 898, 899, 33 Ky. Law Rep. 219, we said:

"It will be conceded, we think, that although it were true that the matter of regulating such internal local affairs as partook of the nature of the employment of firemen and other mere city employees inhered in a municipal corporation as an incident of its character as a private corporation, and was beyond the power of the Legislature to control without reference to the wishes or participation of the local government, still it was competent for the state in creating such corporation to provide by what body of the local magistracy that function was to be exercised. The state always says, or may say, by what officers of a strictly private corporation certain of its corporate functions must be discharged, although it would be clearly incompetent for the Legislature to directly regulate and control such affairs of the corporation."

If it be conceded that the acquisition, operation, and maintenance of an interstate bridge, provided for in the act of 1932, are nongovernmental functions, the act in no way disregards, transcends or encroaches upon the power and right of local self-government of the city in respect thereto.

The city argues that "the city commissioners are clearly vested with discretion (a) to acquire a bridge under the Act of 1894, and (b) to acquire a bridge under the Act of 1932, and (c) not to acquire a bridge at all. The bridge commission, however, now claims the power to veto any decision the city may make. Thus, if the city commissioners decide to issue general revenue bonds in order to pay cash for the bridge and the people approve them, the bridge commission has the power to upset the whole scheme, and buy a bridge under the Act of 1932. If the city commissioners decide not to own a bridge, the bridge commission, notwithstanding, may compel the city to accept a deed. If the city commissioners vote to buy a bridge on the 1932 plan, the bridge commission may refuse to act."

This argument erroneously assumes that the act of 1932, in its authorization of the acquisition, operation, and maintenance of a bridge in the manner set forth therein divests the city commissioners of their original and inherent functions as a legislative body. Indeed, the power and right of the bridge commission and of the city commissioners under the acts of 1932 and 1894 are purely statutory. Except for these enactments, neither of these agencies of the city nor the city itself is clothed with the power to acquire, operate, and maintain a bridge as therein set forth. The argument of the city that a confused condition or a conflict of authority may arise unless the city commissioners are accorded superiority of power and control over the bridge commission is anticipatory, and, if such should arise, it will be in virtue of the actions of the agencies of the city and not the fault of the law, which in no way affects the constitutionality of the act of 1932.

It is a rule of construction that general authority conferred on one agency of the government will not be construed as imposing power on it to interfere or control the operations of another agency. Such authority must be expressly given by the Constitution or a statute. City of Mt. Sterling v. Montgomery County, 152 Ky. 637, 153 S. W. 952, 44 L. R. A. (N. S.) 57; Kentucky Institution for Education of Blind v. City of Louisville, 123 Ky. 767, 97 S. W. 402, 30 Ky. Law Rep. 136, 8 L. R. A. (N. S.) 553; Board of Councilmen of City of Frankfort v. Commonwealth, 243 Ky. 633, 49 S. W. (2d) 548.

Neither the act of 1932 nor of 1894 (Acts 1894, c. 100, art. 4, sec. 1, subd. 5) nor any other provision of the statute clothes the city commissioners with the power or right to dictate or control the discretion of the bridge commission in the performance of its statutory duties. The power of the legislative body of the city to organize and install in office the commission under the act of 1932 is permissive and not mandatory, and, after the appointment of its members and their qualifications in the manner authorized and directed by the act, the commission thus brought into existence is thereafter an independent agency of the city, vested with all the functions enumerated in the act, and, so long as it acts honestly and in good faith, in the performance of its duties, the city commissioners are with-

out authority, either statutory or constitutional, to dispute, impede, or interrupt its actions thereunder. Its functions are administrative and not legislative, to carry out the legislative intent as it is expressed in the act. The argument that the constitutionality of the acts involved in the Klein and the Miller Cases was assailed by taxpayers and the present one was instituted by the city itself, and this fact "gives rise to a distinction which makes our conclusion" in those cases "wholly inapplicable in the pending case," is not sustained by either authority, logic, or reason.

Our ruling in the Klein and Miller Cases is conclusive of the constitutional validity of the act of 1932. See Fox v. Board of Louisville, etc., 244 Ky. 1, 50 S. W. (2d) 67; City of Duluth v. Rosenblum, 180 Minn. 352, 230 N. W. 830; State v. Voorhies, 169 La. 626, 125 So. 737; In re Baldwin Tp. Allegheny County Annexation, 103 Pa. Super. 106, 158 A. 316; Appeal of Ward, 289 Pa. 458, 137 A. 630.

The judgment of the circuit court not being consistent herewith, it is reversed for proceedings conforming with this opinion.

The whole court sitting.