(Slip Opinion) OCTOBER TERM, 2018 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RETURN MAIL, INC. *v.* UNITED STATES POSTAL SERVICE ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 17–1594. Argued February 19, 2019—Decided June 10, 2019

The Leahy-Smith America Invents Act (AIA) of 2011 created the Patent Trial and Appeal Board, 35 U. S. C. §6(c), and established three types of administrative review proceedings before the Board that enable a "person" other than the patent owner to challenge the validity of a patent post-issuance: (1) "inter partes review," §311; (2) "post-grant review," §321; and (3) "covered-business-method review" (CBM review), note following §321. After an adjudicatory proceeding, the Board either confirms the patent claims or cancels some or all of them, §§318(b), 328(b). Any "dissatisfied" party may then seek judicial review in the Federal Circuit, §§319, 329. In addition to AIA review proceedings, a patent can be reexamined either in federal court during a defense to an infringement suit, §282(b), or in an ex parte reexamination by the Patent Office, §§301(a), 302(a).

Return Mail, Inc., owns a patent that claims a method for processing undeliverable mail. The Postal Service subsequently introduced an enhanced address-change service to process undeliverable mail, which Return Mail asserted infringed its patent. The Postal Service petitioned for ex parte reexamination of the patent, but the Patent Office confirmed the patent's validity. Return Mail then sued the Postal Service in the Court of Federal Claims, seeking compensation for the unauthorized use of its invention. While that suit was pending, the Postal Service petitioned for CBM review. The Patent Board concluded that the subject matter of Return Mail's claims was ineligible to be patented and thus canceled the claims underlying its patent. The Federal Circuit affirmed, concluding, as relevant here, that the Government is a "person" eligible to petition for CBM review.

*Held*: The Government is not a "person" capable of instituting the three AIA review proceedings.  Pp. 6–18.

　(a) In the absence of an express definition of the term "person" in the patent statutes, the Court applies a "longstanding interpretive presumption that 'person' does not include the sovereign," and thus excludes a federal agency like the Postal Service.  *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U. S. 765, 780–781.  This presumption reflects "common usage," *United States* v. *Mine Workers*, 330 U. S. 258, 275, as well as an express directive from Congress in the Dictionary Act, 1 U. S. C. §1.  The Dictionary Act does not include the Federal Government among the persons listed in the definition of "person" that courts use "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise," §1.  Contrary to the Postal Service's contention otherwise, this Court has, in several instances, applied the presumption against treating the Government as a statutory person even when, as here, doing so would exclude the Government or one of its agencies from accessing a benefit or favorable procedural device.  See, *e.g., United States* v. *Cooper Corp.*, 312 U. S. 600, 604–605, 614.  Thus, the Court here proceeds from the presumption that the Government is not a "person" authorized to initiate these proceedings absent an affirmative showing to the contrary.  Pp. 7–9.

　(b) The Postal Service must point to some indication in the AIA's text or context affirmatively showing that Congress intended to include the Government as a "person," but its arguments are unpersuasive.  Pp. 9–17.

　　(1) The Postal Service first argues that the AIA's reference to a "person" in the context of post-issuance review proceedings must include the Government because other references to persons in the patent statutes appear to do so.  The consistent-usage principle—*i.e.,* when Congress uses a word to mean one thing in one part of the statute, it will mean the same thing elsewhere in the statute— however, "'readily yields to context,'" especially when a statutory term is used throughout a statute and takes on "distinct characters" in distinct statutory provisions.  *Utility Air Regulatory Group* v. *EPA*, 573 U. S. 302, 320.  Here, where there are at least 18 references to "person[s]" in the Patent Act and the AIA, no clear trend is shown: Sometimes "person" plainly includes or excludes the Government, but sometimes, as here, it might be read either way.  The mere existence of some Government-inclusive references cannot make the "affirmative showing," *Stevens*, 529 U. S., at 781, required to overcome the presumption that the Government is not a "person" eligible to petition for AIA review proceedings.  Pp. 9–12.

　　(2) The Postal Service next points to the Federal Government's

longstanding history with the patent system, arguing that because federal officers have been able to apply for patents in the name of the United States since 1883, Congress must have intended to allow the Government access to AIA review proceedings. But the Government's ability to obtain a patent does not speak to whether Congress meant for the Government to participate as a third-party challenger in AIA proceedings established only eight years ago. Moreover, even assuming that the Government may petition for ex parte reexamination of an issued patent, as a 1981 Patent Office Manual of Patent Examining Procedure (MPEP) indicates, an ex parte reexamination process is fundamentally different from an AIA review proceeding. The former process is internal, and the party challenging the patent may not participate. By contrast, adversarial, adjudicatory AIA review proceedings are between the "person" who petitioned for review and the patent owner; they include briefing, a hearing, discovery, and the presentation of evidence; and the losing party has appeal rights. Congress may have had good reason to authorize the Government to initiate a hands-off ex parte reexamination but not to become a party to the AIA's full-blown adversarial proceeding. Nothing suggests that Congress had the 1981 MPEP statement about ex parte reexamination in mind when it created the AIA review proceedings. And because there is no "settled" meaning of the term "person" with respect to the newly established AIA review proceedings, see *Bragdon* v. *Abbott*, 524 U. S. 624, 645, the MPEP does not justify putting aside the presumptive meaning of "person." Pp. 13–15.

(3) Finally, the Postal Service argues that it must be a "person" who may petition for AIA review proceedings because, like other potential infringers, it is subject to civil liability and can assert a defense of patent invalidity. It would thus be anomalous, the Postal Service posits, to deny it a benefit afforded to other infringers— namely, the ability to challenge a patent *de novo* before the Patent Office, rather than only with clear and convincing evidence in defense to an infringement suit. Federal agencies, however, face lower and more calculable risks than nongovernmental actors, so it is reasonable for Congress to have treated them differently. Excluding federal agencies from AIA review proceedings also avoids the awkward situation of having a civilian patent owner defend the patentability of her invention in an adversarial, adjudicatory proceeding initiated by one federal agency and overseen by a different federal agency. Pp. 15–17.

868 F. 3d 1350, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, GORSUCH, and KAVANAUGH, JJ., joined. BREYER, J., filed a dissenting opinion, in which GINSBURG and KAGAN, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 17–1594

## RETURN MAIL, INC., PETITIONER *v.* UNITED STATES POSTAL SERVICE, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[June 10, 2019]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

In the Leahy-Smith America Invents Act of 2011, 35 U. S. C. §100 *et seq.*, Congress created the Patent Trial and Appeal Board and established three new types of administrative proceedings before the Board that allow a "person" other than the patent owner to challenge the validity of a patent post-issuance. The question presented in this case is whether a federal agency is a "person" able to seek such review under the statute. We conclude that it is not.

I

A

The Constitution empowers Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective . . . Discoveries." Art. I, §8, cl. 8. Pursuant to that authority, Congress established the United States Patent and Trademark Office (Patent Office) and tasked it with "the granting and issuing of patents." 35 U. S. C. §§1, 2(a)(1).

To obtain a patent, an inventor submits an application

describing the proposed patent claims to the Patent Office. See §§111(a)(1), 112. A patent examiner then reviews the application and prior art (the information available to the public at the time of the application) to determine whether the claims satisfy the statutory requirements for patentability, including that the claimed invention is useful, novel, nonobvious, and contains eligible subject matter. See §§101, 102, 103. If the Patent Office accepts the claim and issues a patent, the patent owner generally obtains exclusive rights to the patented invention throughout the United States for 20 years. §§154(a)(1), (2).

After a patent issues, there are several avenues by which its validity can be revisited. The first is through a defense in an infringement action. Generally, one who intrudes upon a patent without authorization "infringes the patent" and becomes subject to civil suit in the federal district courts, where the patent owner may demand a jury trial and seek monetary damages and injunctive relief. §§271(a), 281–284. If, however, the Federal Government is the alleged patent infringer, the patent owner must sue the Government in the United States Court of Federal Claims and may recover only "reasonable and entire compensation" for the unauthorized use. 28 U. S. C. §1498(a).

Once sued, an accused infringer can attempt to prove by clear and convincing evidence "that the patent never should have issued in the first place." *Microsoft Corp.* v. *i4i L. P.*, 564 U. S. 91, 96–97 (2011); see 35 U. S. C. §282(b). If a defendant succeeds in showing that the claimed invention falls short of one or more patentability requirements, the court may deem the patent invalid and absolve the defendant of liability.

The Patent Office may also reconsider the validity of issued patents. Since 1980, the Patent Act has empowered the Patent Office "to reexamine—and perhaps cancel—a patent claim that it had previously allowed."

*Cuozzo Speed Technologies*, *LLC* v. *Lee*, 579 U. S. \_\_\_, \_\_\_ (2016) (slip op., at 3). This procedure is known as ex parte reexamination. "Any person at any time" may cite to the Patent Office certain prior art that may "bea[r] on the patentability of any claim of a particular patent"; and the person may additionally request that the Patent Office reexamine the claim on that basis. 35 U. S. C. §§301(a), 302(a). If the Patent Office concludes that the prior art raises "a substantial new question of patentability," the agency may reexamine the patent and, if warranted, cancel the patent or some of its claims. §§303(a), 304–307. The Director of the Patent Office may also, on her "own initiative," initiate such a proceeding. §303(a).

In 1999 and 2002, Congress added an "inter partes reexamination" procedure, which similarly invited "[a]ny person at any time" to seek reexamination of a patent on the basis of prior art and allowed the challenger to participate in the administrative proceedings and any subsequent appeal. See §311(a) (2000 ed.); §§314(a), (b) (2006 ed.); *Cuozzo Speed Technologies*, 579 U. S., at \_\_\_ (slip op., at 3).

B

In 2011, Congress overhauled the patent system by enacting the America Invents Act (AIA), which created the Patent Trial and Appeal Board and phased out inter partes reexamination. See 35 U. S. C. §6; H. R. Rep. No. 112–98, pt. 1, pp. 46–47. In its stead, the AIA tasked the Board with overseeing three new types of post-issuance review proceedings.

First, the "inter partes review" provision permits "a person" other than the patent owner to petition for the review and cancellation of a patent on the grounds that the invention lacks novelty or nonobviousness in light of "patents or printed publications" existing at the time of the patent application. §311.

Second, the "post-grant review" provision permits "a person who is not the owner of a patent" to petition for review and cancellation of a patent on any ground of patentability. §321; see §§282(b)(2), (b)(3). Such proceedings must be brought within nine months of the patent's issuance. §321.

Third, the "covered-business-method review" (CBM review) provision provides for changes to a patent that claims a method for performing data processing or other operations used in the practice or management of a financial product or service. AIA §§18(a)(1), (d)(1), 125 Stat. 329, note following 35 U. S. C. §321, p. 1442. CBM review tracks the "standards and procedures of" post-grant review with two notable exceptions: CBM review is not limited to the nine months following issuance of a patent, and "[a] person" may file for CBM review only as a defense against a charge or suit for infringement. §18(a)(1)(B), 125 Stat. 330.[1]

The AIA's three post-issuance review proceedings are adjudicatory in nature. Review is conducted by a three-member panel of the Patent Trial and Appeal Board, 35 U. S. C. §6(c), and the patent owner and challenger may seek discovery, file affidavits and other written memoranda, and request an oral hearing, see §§316, 326; AIA §18(a)(1), 125 Stat. 329; *Oil States Energy Services, LLC* v. *Greene's Energy Group, LLC*, 584 U. S. ___, ___–___ (2018) (slip op., at 3–4). The petitioner has the burden of proving unpatentability by a preponderance of the evidence. §§282, 316(e), 326(e). The Board then either confirms the patent claims or cancels some or all of the claims. §§318(b), 328(b). Any party "dissatisfied" with the Board's final decision may seek judicial review in the Court of

---

[1] The CBM review program will stop accepting new claims in 2020. See AIA §18(a)(3)(A), 125 Stat. 330; 77 Fed. Reg. 48687 (2012).

Appeals for the Federal Circuit, §§319, 329; see §141(c), and the Director of the Patent Office may intervene, §143.

In sum, in the post-AIA world, a patent can be reexamined either in federal court during a defense to an infringement action, in an ex parte reexamination by the Patent Office, or in the suite of three post-issuance review proceedings before the Patent Trial and Appeal Board. The central question in this case is whether the Federal Government can avail itself of the three post-issuance review proceedings, including CBM review.

C

Return Mail, Inc., owns U. S. Patent No. 6,826,548 ('548 patent), which claims a method for processing mail that is undeliverable. Beginning in 2003, the United States Postal Service allegedly began exploring the possibility of licensing Return Mail's invention for use in handling the country's undelivered mail. But the parties never reached an agreement.

In 2006, the Postal Service introduced an enhanced address-change service to process undeliverable mail. Return Mail's representatives asserted that the new service infringed the '548 patent, and the company renewed its offer to license the claimed invention to the Postal Service. In response, the Postal Service petitioned for ex parte reexamination of the '548 patent. The Patent Office canceled the original claims but issued several new ones, confirming the validity of the '548 patent. Return Mail then sued the Postal Service in the Court of Federal Claims, seeking compensation for the Postal Service's unauthorized use of its invention, as reissued by the Patent Office.

While the lawsuit was pending, the Postal Service again petitioned the Patent Office to review the '548 patent, this time seeking CBM review. The Patent Board instituted review. The Board agreed with the Postal Service that

Return Mail's patent claims subject matter that was ineligible to be patented, and it canceled the claims underlying the '548 patent. A divided panel of the Court of Appeals for the Federal Circuit affirmed. See 868 F. 3d 1350 (2017). As relevant here, the Federal Circuit held, over a dissent, that the Government is a "person" eligible to petition for CBM review. *Id.*, at 1366; see AIA §18(a)(1)(B), 125 Stat. 330 (only a qualifying "person" may petition for CBM review). The court then affirmed the Patent Board's decision on the merits, invalidating Return Mail's patent claims.

We granted certiorari to determine whether a federal agency is a "person" capable of petitioning for post-issuance review under the AIA.[2] 586 U. S. ___ (2018).

## II

The AIA provides that only "a person" other than the patent owner may file with the Office a petition to institute a post-grant review or inter partes review of an issued patent. 35 U. S. C. §§311(a), 321(a). The statute likewise provides that a "person" eligible to seek CBM review may not do so "unless the person or the person's real party in interest or privy has been sued for infringement." AIA §18(a)(1)(B), 125 Stat. 330. The question in this case is whether the Government is a "person" capable of instituting the three AIA review proceedings.

### A

The patent statutes do not define the term "person." In

---

[2] The Federal Circuit rejected Return Mail's argument that the Postal Service cannot petition for CBM review for the independent reason that a suit against the Government under 28 U. S. C. §1498 is not a suit for infringement. 868 F. 3d 1350, 1366 (2017). We denied Return Mail's petition for certiorari on this question and therefore have no occasion to resolve it in this case. Accordingly, we assume that a §1498 suit is one for infringement and refer to it as the same.

the absence of an express statutory definition, the Court applies a "longstanding interpretive presumption that 'person' does not include the sovereign," and thus excludes a federal agency like the Postal Service. *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U. S. 765, 780–781 (2000); see *United States* v. *Mine Workers*, 330 U. S. 258, 275 (1947); *United States* v. *Cooper Corp.*, 312 U. S. 600, 603–605 (1941); *United States* v. *Fox*, 94 U. S. 315, 321 (1877).

This presumption reflects "common usage." *Mine Workers*, 330 U. S., at 275. It is also an express directive from Congress: The Dictionary Act has since 1947 provided the definition of "'person'" that courts use "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise." 1 U. S. C. §1; see *Rowland* v. *California Men's Colony*, *Unit II Men's Advisory Council*, 506 U. S. 194, 199–200 (1993). The Act provides that the word "'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." §1. Notably absent from the list of "person[s]" is the Federal Government. See *Mine Workers*, 330 U. S., at 275 (reasoning that Congress' express inclusion of partnerships and corporations in §1 implies that Congress did not intend to include the Government). Thus, although the presumption is not a "hard and fast rule of exclusion," *Cooper*, 312 U. S., at 604–605, "it may be disregarded only upon some affirmative showing of statutory intent to the contrary," *Stevens*, 529 U. S., at 781.

The Postal Service contends that the presumption is strongest where interpreting the word "person" to include the Government imposes liability on the Government, and is weakest where (as here) interpreting "person" in that way benefits the Government. In support of this argument, the Postal Service points to a different interpretive canon: that Congress must unequivocally express any

waiver of sovereign immunity for that waiver to be effective. See *FAA* v. *Cooper*, 566 U. S. 284, 290 (2012). That clear-statement rule inherently applies only when a party seeks to hold the Government liable for its actions; otherwise immunity is generally irrelevant. In the Postal Service's view, the presumption against treating the Government as a statutory person works in tandem with the clear-statement rule regarding immunity, such that both apply only when a statute would subject the Government to liability.

Our precedents teach otherwise. In several instances, this Court has applied the presumption against treating the Government as a statutory person when there was no question of immunity, and doing so would instead exclude the Federal Government or one of its agencies from accessing a benefit or favorable procedural device. In *Cooper*, 312 U. S., at 604–605, 614, for example, the Court held that the Federal Government was not "'[a]ny person'" who could sue for treble damages under §7 of the Sherman Anti-Trust Act. Accord, *International Primate Protection League* v. *Administrators of Tulane Ed. Fund*, 500 U. S. 72, 82–84 (1991) (concluding that the National Institutes of Health was not authorized to remove an action as a "'person acting under [a federal]' officer" pursuant to 28 U. S. C. §1442(a)(1)); *Davis* v. *Pringle*, 268 U. S. 315, 317–318 (1925) (reasoning that "normal usages of speech" indicated that the Government was not a "person" entitled to priority under the Bankruptcy Act); *Fox*, 94 U. S., at 321 (holding that the Federal Government was not a "'person capable by law of holding real estate,'" absent "an express definition to that effect").

Thus, although the presumption against treating the Government as a statutory person is "'particularly applicable where it is claimed that Congress has subjected the [sovereign] to liability to which they had not been subject before,'" *Stevens*, 529 U. S., at 781, it is hardly confined to

such cases. Here, too, we proceed from the presumption that the Government is not a "person" authorized to initiate these proceedings absent an affirmative showing to the contrary.

## B

Given the presumption that a statutory reference to a "person" does not include the Government, the Postal Service must show that the AIA's context indicates otherwise. Although the Postal Service need not cite to "an express contrary definition," *Rowland*, 506 U. S., at 200, it must point to some indication in the text or context of the statute that affirmatively shows Congress intended to include the Government. See *Cooper*, 312 U. S., at 605.

The Postal Service makes three arguments for displacing the presumption. First, the Postal Service argues that the statutory text and context offer sufficient evidence that the Government is a "person" with the power to petition for AIA review proceedings. Second, the Postal Service contends that federal agencies' long history of participation in the patent system suggests that Congress intended for the Government to participate in AIA review proceedings as well. Third, the Postal Service maintains that the statute must permit it to petition for AIA review because §1498 subjects the Government to liability for infringement. None delivers.

## 1

The Postal Service first argues that the AIA's reference to a "person" in the context of post-issuance review proceedings must include the Government because other references to persons in the patent statutes appear to do so. Indeed, it is often true that when Congress uses a word to mean one thing in one part of the statute, it will mean the same thing elsewhere in the statute. See *Merrill Lynch, Pierce, Fenner & Smith Inc.* v. *Dabit*, 547 U. S. 71,

86 (2006).   This principle, however, "readily yields to context," especially when a statutory term is used throughout a statute and takes on "distinct characters" in distinct statutory provisions.   See *Utility Air Regulatory Group* v. *EPA*, 573 U. S. 302, 320 (2014) (internal quotation marks omitted).   That is the case here.   The Patent Act and the AIA refer to "person[s]" in at least 18 different places, and there is no clear trend: Sometimes "person" plainly includes the Government,[3] sometimes it plainly excludes the Government,[4] and sometimes—as here—it might be read either way.

   Looking on the bright side, the Postal Service and the dissent, see *post*, at 2, focus on §207(a)(1), which authorizes "[e]ach [f]ederal agency" to "apply for, obtain, and maintain patents or other forms of protection . . . on inventions in which the Federal Government owns a right, title, or interest."   It follows from §207(a)(1)'s express inclusion of

---

[3] For example, the statute expressly includes the Government as a "person" in §296(a), which, as enacted, provided that States "shall not be immune . . . from suit in Federal court by any person, including any governmental or nongovernmental entity, for infringement of a patent under section 271."   35 U. S. C. §296(a) (1988 ed., Supp. IV) (ruled unconstitutional by *Florida Prepaid Postsecondary Ed. Expense Bd.* v. *College Savings Bank*, 527 U. S. 627, 630 (1999)).

[4] For example, in §6(a), the Patent Act provides that the administrative patent judges comprising the Board must be "persons of competent legal knowledge and scientific ability."   Likewise, §257(e) requires the Patent Office Director to treat as confidential any referral to the Attorney General of suspected fraud in the patent process unless the United States charges "a person" with a criminal offense in connection with the fraud.   See also §2(b)(11) (authorizing the Patent Office to cover the expenses of "persons" other than federal employees attending programs on intellectual-property protection); §100(h) (defining a "'joint research agreement'" as a written agreement between "2 or more persons or entities").   Some of these provisions (§§2(b)(11), 6(a), and 100(h)) were enacted as part of the AIA, alongside the AIA review proceedings.   See 125 Stat. 285, 313, 335.

federal agencies among those eligible to apply for patents that the statute's references to "person[s]" in the subsections governing the patent-application process and questions of patentability (§§102(a), 118, and 119) must also include federal agencies.[5]  In other words, the right described in §207(a)(1) provides a sufficient contextual clue that the word "person"—when used in the other provisions governing the application process §207(a)(1) makes available to federal agencies—includes the Government.

But §207(a)(1) provides no such clue as to the interpretation of the AIA review provisions because it implies nothing about what a federal agency may or may not do following the issuance of someone else's patent.  Conversely, reading the review provisions to exclude the Government has no bearing on a federal agency's right to obtain a patent under §207(a)(1).  An agency may still apply for and obtain patents whether or not it may petition for a review proceeding under the AIA seeking cancellation of a patent it does not own.  There is thus no reason to think that "person" must mean the same thing in these two different parts of the statute.  See *Utility Air*, 573 U. S., at 320.[6]

—————

[5] Section 102(a) provides that "[a] person shall be entitled to a patent" as long as the patent is novel.  Section 118 states that "[a] person to whom the inventor has assigned" an invention may file a patent application.  Section 119 discusses the effect of a patent application filed in a foreign country "by any person" on the patent-application process in the United States.

[6] Likewise, we are not persuaded by the dissent's suggestion that §207(a)(3)—which authorizes federal agencies "to protect and administer rights" to federally owned inventions—provides a statutory basis for the Postal Service's initiation of AIA review proceedings.  See *post*, at 5–6.  The statute explains how a federal agency is to "protect" those rights: "either directly or through contract," such as by "acquiring rights for and administering royalties" or "licensing."  §207(a)(3).  The

The Postal Service cites other provisions that may refer to the Government—namely, the "intervening rights" provisions that offer certain protections for "any person" who is lawfully making or using an invention when the Patent Office modifies an existing patent claim in a way that deems the person's (previously lawful) use to be infringement. See §§252, 307(b), 318(c), 328(c). The Postal Service argues that the Government must be among those protected by these provisions and from there deduces that it must also be permitted to petition for AIA review proceedings because the review provisions and the intervening-rights provisions were all added to the Patent Act by the AIA at the same time. See *Powerex Corp.* v. *Reliant Energy Services, Inc.,* 551 U. S. 224, 232 (2007) (invoking the consistent-usage canon where the same term was used in related provisions enacted at the same time).

But regardless of whether the intervening-rights provisions apply to the Government (a separate interpretive question that we have no occasion to answer here), the Postal Service's chain of inferences overlooks a confounding link: The consistent-usage canon breaks down where Congress uses the same word in a statute in multiple conflicting ways. As noted, that is the case here. In the face of such inconsistency, the mere existence of some Government-inclusive references cannot make the "affirmative showing," *Stevens,* 529 U. S., at 781, required to overcome the presumption that Congress did not intend to include the Government among those "person[s]" eligible to petition for AIA review proceedings.[7]

—————

AIA review proceedings, which a "person" may initiate regardless of ownership, do not fall clearly within the ambit of §207(a)(3).

[7] The dissent responds that we should set aside the statutory references to "person[s]" that naturally exclude the Government and instead count only those references that expressly or impliedly include the Government. See *post,* at 3–4. But the point of the canon the Postal

2

The Postal Service next points to the Federal Government's longstanding history with the patent system. It reminds us that federal officers have been able to apply for patents in the name of the United States since 1883, see Act of Mar. 3, 1883, 22 Stat. 625—which, in the Postal Service's view, suggests that Congress intended to allow the Government access to AIA review proceedings as well. But, as already explained, the Government's ability to obtain a patent under §207(a)(1) does not speak to whether Congress meant for the Government to participate as a third-party challenger in AIA review proceedings. As to those proceedings, there is no longstanding practice: The AIA was enacted just eight years ago.[8]

More pertinently, the Postal Service and the dissent both note that the Patent Office since 1981 has treated federal agencies as "persons" who may cite prior art to the agency or request an ex parte reexamination of an issued patent. See *post,* at 5. Recall that §301(a) provides that "[a]ny person at any time may cite to the Office in writing . . . prior art . . . which that person believes to have a bearing on the patentability of any claim of a particular patent." As memorialized in the Patent Office's Manual of Patent Examining Procedure (MPEP), the agency has understood §301's reference to "any person" to include "governmental entit[ies]." Dept. of Commerce, Patent and Trademark Office, MPEP §§2203, 2212 (4th rev. ed., July 1981).

We might take account of this "executive interpretation"

_____

Service invokes is to ascertain the meaning of a statutory term from its consistent usage in other parts of the statute, not to pick sides among differing uses.

[8]Moreover, for those of us who consider legislative history, there is none that suggests Congress considered whether the Federal Government or its agencies would have access to the AIA review proceedings.

if we were determining whether Congress meant to include the Government as a "person" for purposes of the ex parte reexamination procedures themselves. See, *e.g.*, *United States* v. *Hermanos y Compañia*, 209 U. S. 337, 339 (1908). Here, however, the Patent Office's statement in the 1981 MPEP has no direct relevance. Even assuming that the Government may petition for ex parte reexamination, ex parte reexamination is a fundamentally different process than an AIA post-issuance review proceeding.[9] Both share the common purpose of allowing non-patent owners to bring questions of patent validity to the Patent Office's attention, but they do so in meaningfully different ways.

In an ex parte reexamination, the third party sends information to the Patent Office that the party believes bears on the patent's validity, and the Patent Office decides whether to reexamine the patent. If it decides to do so, the reexamination process is internal; the challenger is not permitted to participate in the Patent Office's process. See 35 U. S. C. §§302, 303. By contrast, the AIA post-issuance review proceedings are adversarial, adjudicatory proceedings between the "person" who petitioned for review and the patent owner: There is briefing, a hearing, discovery, and the presentation of evidence, and the losing party has appeal rights. See *supra*, at 4–5. Thus, there are good reasons Congress might have authorized the Government to initiate a hands-off ex parte reexamination but not to become a party to a full-blown adversarial proceeding before the Patent Office and any subsequent

---

[9] As discussed above, see *supra*, at 2–4, ex parte reexamination is not one of the three new proceedings added by the AIA, and therefore the question whether its reference to a "person" includes the Government is beyond the scope of the question presented. Moreover, neither party contests that a federal agency may cite prior art to the Patent Office and ask for ex parte reexamination.

appeal. After all, the Government is already in a unique position among alleged infringers given that 28 U. S. C. §1498 limits patent owners to bench trials before the Court of Federal Claims and monetary damages, whereas 35 U. S. C. §271 permits patent owners to demand jury trials in the federal district courts and seek other types of relief.

Thus, there is nothing to suggest that Congress had the 1981 MPEP statement in mind when it enacted the AIA. It is true that this Court has often said, "[w]hen administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well." *Bragdon* v. *Abbott*, 524 U. S. 624, 645 (1998). But there is no "settled" meaning of the term "person" with respect to the newly established AIA review proceedings. Accordingly, the MPEP does not justify putting aside the presumptive meaning of "person" here.

3

Finally, the Postal Service argues that it must be a "person" who may petition for AIA review proceedings because, like other potential infringers, it is subject to civil liability and can assert a defense of patent invalidity. See §§282(b)(2)–(3). In the Postal Service's view, it is anomalous to deny it a benefit afforded to other infringers—the ability to challenge a patent *de novo* before the Patent Office, rather than only as an infringement defense that must be proved by clear and convincing evidence. See *ibid.*; *Microsoft Corp.*, 564 U. S., at 95 (holding that §282's presumption of validity in litigation imposes a clear and convincing evidence standard on defendants seeking to prove invalidity).

The Postal Service overstates the asymmetry. Agencies

retain the ability under §282 to assert defenses to in-fringement.  Once sued, an agency may, like any other accused infringer, argue that the patent is invalid, and the agency faces the same burden of proof as a defendant in any other infringement suit.  The Postal Service lacks only the additional tool of petitioning for the initiation of an administrative proceeding before the Patent Office under the AIA, a process separate from defending an infringe-ment suit.

We see no oddity, however, in Congress' affording non-governmental actors an expedient route that the Govern-ment does not also enjoy for heading off potential infringement suits.  Those other actors face greater and more uncertain risks if they misjudge their right to use technology that is subject to potentially invalid patents.  Most notably, §1498 restricts a patent owner who sues the Government to her "reasonable and entire compensation" for the Government's infringing use; she cannot seek an injunction, demand a jury trial, or ask for punitive damages, all of which are available in infringement suits against nongovernmental actors under §271(e)(4).  Thus, although federal agencies remain subject to damages for impermis-sible uses, they do not face the threat of preliminary in-junctive relief that could suddenly halt their use of a patented invention, and they enjoy a degree of certainty about the extent of their potential liability that ordinary accused infringers do not.  Because federal agencies face lower risks, it is reasonable for Congress to have treated them differently.[10]

_____

[10] If the Government were a "person" under the AIA, yet another anomaly might arise under the statute's estoppel provisions.  Those provisions generally preclude a party from relitigating issues in any subsequent proceedings in federal district court, before the Interna-tional Trade Commission, and (for inter partes review and post-grant review) before the Patent Office.  See 35 U. S. C. §§315(e), 325(e); AIA

Finally, excluding federal agencies from the AIA review proceedings avoids the awkward situation that might result from forcing a civilian patent owner (such as Return Mail) to defend the patentability of her invention in an adversarial, adjudicatory proceeding initiated by one federal agency (such as the Postal Service) and overseen by a different federal agency (the Patent Office). We are therefore unpersuaded that the Government's exclusion from the AIA review proceedings is sufficiently anomalous to overcome the presumption that the Government is not a "person" under the Act.[11]

## III

For the foregoing reasons, we hold that a federal agency is not a "person" who may petition for post-issuance re-

—————

§18(a)(1)(D), 125 Stat. 330. Because infringement suits against the Government must be brought in the Court of Federal Claims—which is not named in the estoppel provisions—the Government might not be precluded by statute from relitigating claims raised before the Patent Office if it were able to institute post-issuance review under the AIA. See 28 U. S. C. §1498(a). Although Return Mail cites this asymmetry in support of its interpretation, we need not rely on it, because Return Mail already prevails for the reasons given above. At any rate, the practical effect of the estoppel provisions' potential inapplicability to the Government is uncertain given that this Court has not decided whether common-law estoppel applies in §1498 suits.

[11] Nor do we find persuasive the dissent's argument that the Postal Service should be allowed to petition for post-issuance review proceedings because its participation would further the purpose of the AIA: to provide a cost-effective and efficient alternative to litigation in the courts. See *post*, at 5; H. R. Rep. No. 112–98, pt. 1, pp. 47–48 (2001). Statutes rarely embrace every possible measure that would further their general aims, and, absent other contextual indicators of Congress' intent to include the Government in a statutory provision referring to a "person," the mere furtherance of the statute's broad purpose does not overcome the presumption in this case. See *Cooper*, 312 U. S., at 605 ("[I]t is not our function to engraft on a statute additions which we think the legislature logically might or should have made").

view under the AIA.  The judgment of the United States Court of Appeals for the Federal Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 17–1594

_____

## RETURN MAIL, INC., PETITIONER *v.* UNITED STATES POSTAL SERVICE, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[June 10, 2019]

JUSTICE BREYER, with whom JUSTICE GINSBURG and JUSTICE KAGAN join, dissenting.

When A sues B for patent infringement, B may defend against the lawsuit by claiming that A's patent is invalid. In court, B must prove the invalidity of A's patent by "clear and convincing evidence." *Microsoft Corp.* v. *i4i L. P.*, 564 U. S. 91, 95 (2011). Congress, however, has also established a variety of *administrative* procedures that B may use to challenge the validity of A's patent. Although some of the statutes setting forth these administrative procedures have existed for several decades, we consider here the three administrative procedures that Congress established in the Leahy-Smith America Invents Act of 2011. See *ante*, at 3–5. All three involve hearings before the Patent Trial and Appeal Board, which is part of the Patent and Trademark Office. And all three involve a lower burden of proof: B need only prove by a preponderance of the evidence that A's patent is invalid. 35 U. S. C. §§316(e), 326(e); see America Invents Act, §18(a)(1), 125 Stat. 329.

The America Invents Act states that all three administrative procedures may be invoked only by a "person." 35 U. S. C. §§311(a), 321(a); America Invents Act, §18(a)(1)(B), 125 Stat. 330. Here we must decide whether the Government falls within the scope of the word "per-

son." Are federal agencies entitled to invoke these administrative procedures on the same terms as private parties? In my view, the answer is "yes." For purposes of these statutes, Government agencies count as "persons" and so may invoke these procedures to challenge the validity of a patent.

The Court reaches the opposite conclusion based on the interpretive presumption that the word "person" excludes the Government. See *ante*, at 7. This presumption, however, is "no hard and fast rule of exclusion." *United States* v. *Cooper Corp.*, 312 U. S. 600, 604–605 (1941). We have long said that this presumption may be overcome when "'[t]he purpose, the subject matter, the context, the legislative history, [or] the executive interpretation . . . indicate an intent'" to include the Government. *International Primate Protection League* v. *Administrators of Tulane Ed. Fund*, 500 U. S. 72, 83 (1991) (quoting *Cooper*, *supra*, at 605). And here these factors indicate that very intent.

I

The language of other related patent provisions strongly suggests that, in the administrative review statutes at issue here, the term "person" includes the Government.

The Patent Act states that "[e]ach Federal agency is authorized" to "apply for, obtain, and maintain patents or other forms of protection . . . on inventions in which the Federal Government owns a right, title, or interest." 35 U. S. C. §207(a)(1). The Act then provides that a "*person*" shall be "entitled to a patent" if various "[c]onditions for patentability" have been met. §102(a)(1) (emphasis added). It authorizes a "*person* to whom the inventor has assigned" an invention to apply for a patent in some circumstances. §118 (emphasis added). And it generally allows "any *person*" who initially files a patent application in a foreign country to obtain in the United States the advantage of that earlier filing date. §119 (emphasis

added). Because the Government is authorized to "obtain" patents, there is no dispute here that the word "person" in these patent-eligibility provisions must include the Government. See *ante*, at 10–11.

Now consider a few of the statutory provisions that help those *accused of infringing* a patent. Suppose A obtains a patent in Year One, modifies this patent in Year Three, and then accuses B of infringing the patent *as modified* in Year Five. What if B's conduct infringes the modified patent but did not infringe A's patent as it originally stood in Year One? In these circumstances, Congress has provided that A generally cannot win an infringement suit against B. The relevant statutes, known as the "intervening rights" provisions, state that B is entitled to a defense that his conduct did not violate the original, unmodified patent. §§252, 307(b), 318(c), 328(c). These statutes, several of which were enacted alongside the three administrative review procedures in the America Invents Act, provide that a "*person*" may take advantage of this defense. *Ibid.* (emphasis added). Again, as the parties all agree, the word "person" in these provisions includes the Government. See Reply Brief 3; *Lamson* v. *United States*, 117 Fed. Cl. 755, 760 (2014) (noting that the Government may "avail itself of any defense that is available to a private party in an infringement action").

The majority refers to several patent-related provisions that use the word "person" but that do not include the Government within the scope of that term. See *ante*, at 10, and n. 4. These provisions, however, concern details of administration that, almost by definition, could not involve an entity such as the Government. The first provision cited by the majority says that administrative patent judges must be "persons of competent legal knowledge and scientific ability." §6(a). Patent judges are human beings, not governments or corporations or other artificial entities. The second requires the Patent Office to keep confi-

dential a referral to the Attorney General of possible fraud unless the Government charges "a person" with a related criminal offense. §257(e). Although the word "person" here could refer to a corporation, it cannot refer to the Government, for governments do not charge themselves with crimes. The third concerns payment for the "subsistence expenses and travel-related expenses" of "persons" who attend certain programs relating to intellectual property law. §2(b)(11). But governments as entities do not travel, attend events, or incur expenses for "subsistence" or "lodging"; only their employees do. *Ibid.* (The majority also refers to a fourth provision, which defines a "joint research agreement" as an agreement between "2 or more persons or entities." §100(h). If the Government is not a "person" under this provision, it is only because the adjacent term "entities" already covers the Government.)

The fact that the word "person" does not apply to the Government where that application is close to logically impossible proves nothing at all about the word's application here. On the one hand, Congress has used the word "person" to refer to Government agencies when the statute concerns the criteria for obtaining patents, or when the statute concerns the availability of certain infringement defenses. On the other, Congress has *not* used the word "person" to refer to Government agencies when doing so would be close to logically impossible, or where the context otherwise makes plain that the Government is not a "person." The provisions at issue here, which establish administrative procedures for the benefit of parties accused of infringement, are much closer to the former category than the latter. It therefore makes little sense to presume that the word "person" excludes the Government, for the surrounding provisions point to the opposite conclusion.

## II

The statutes' purposes, as illuminated by the legislative

history and longstanding executive interpretation, show even more clearly that Congress intended the term "person" to include the Government in this context.

Congress enacted the new administrative review procedures for two basic reasons. *First*, Congress sought to "improve the quality of patents" and "make the patent system more efficient" by making it easier to challenge "questionable patents." H. R. Rep. No. 112–98, pt. 1, pp. 39, 48 (2011); see *id.*, at 39 (noting the "growing sense that questionable patents are too easily obtained and are too difficult to challenge"); *id.*, at 45 (explaining that pre-existing administrative procedures were "less viable alternativ[es] to litigation . . . than Congress intended"). Congress' goal of providing an easier way for parties to challenge "questionable patents" is implicated to the same extent whether the Government or a private party is the one accused of infringing an invalid patent. That is perhaps why the Executive Branch has long indicated that Government agencies count as "perso[ns]" who are entitled to invoke the administrative review procedures that predate the America Invents Act. See Dept. of Commerce, Patent and Trademark Office, Manual of Patent Examining Procedure §§2203, 2212 (4th rev. ed., Sept. 1982).

*Second*, the statutes help maintain a robust patent system in another way: They allow B, a patent holder who might be sued for infringing A's (related) patent, to protect B's own patent by more easily proving the invalidity of A's patent. Insofar as this objective underlies the statutes at issue here, it applies to the same extent whether B is a private person or a Government agency. Indeed, the Patent Act explicitly states that the Government may "maintain" patents and "undertake all other suitable and necessary steps to protect and administer rights to federally owned inventions on behalf of the Federal Government." 35 U. S. C. §§207(a)(1), (3). And the use of administrative procedures to "protect" a patented invention from

claims of infringement (by clearing away conflicting patents that cover the same or similar ground) would seem to be "suitable and necessary" whether a private person or a Government agency invokes these procedures. Cf. *Halo Electronics, Inc.* v. *Pulse Electronics, Inc.*, 579 U. S. ___, ___ (2016) (slip op., at 14) (noting that a third-party patent covering part of an invention may be used to exact "licensing fees" from the inventor); *Acorda Therapeutics, Inc.* v. *Roxane Laboratories, Inc.*, 903 F. 3d 1310, 1337 (CA Fed. 2018) (explaining that a third-party patent covering part of an invention may be used to deter or curtail the inventor's use of the invention).

The majority responds that allowing a Government agency to invoke these administrative procedures would create an "awkward situation," as one Government agency—namely, the Patent Office—would end up adjudicating the patent rights of another Government agency. *Ante*, at 17. But why is that "awkward"? In the field of patent law, a Government agency facing a possible infringement suit has long been thought legally capable of invoking other forms of administrative review. See Manual of Patent Examining Procedure §§2203, 2212. Moreover, the statutes before us presumably would permit a private party to invoke any of the three new procedures to challenge a Government patent. In such cases, one Government agency, the Patent Office, would be asked to adjudicate the patent rights of another. Thus, the situation the majority attempts to avoid is already baked into the cake.

The majority also says that because federal agencies "do not face the threat of preliminary injunctive relief" when they are sued for patent infringement, Congress could have reasonably concluded that it was not necessary for the Government to be able to use the administrative procedures at issue here. *Ante*, at 16; see 28 U. S. C. §1498(a) (limiting the patentee to "reasonable and entire compensation" for infringement by the Government). But patent

infringement suits against the Government still threaten to impose large damages awards. See, *e.g.*, *Hughes Aircraft Co.* v. *United States*, 31 Fed. Cl. 481, 488 (1994) (indicating that the value of the infringing technologies developed by the Government exceeded $3.5 billion); Pet. for Cert. in *United States* v. *Hughes Aircraft Co.*, O. T. 1998, No. 98–871, p. 8 (noting that damages ultimately exceeded $100 million). That fact can create a strong need for speedy resolution of a dispute over patent validity.

When, for example, the Department of Homeland Security recently instituted a research initiative to equip cell phones with hazardous-materials sensors in order to mitigate the risk of terrorist attacks, it faced an infringement lawsuit that threatened to interfere with the project. See *Golden* v. *United States*, 129 Fed. Cl. 630 (2016); Brief for Prof. Tejas N. Narechania as *Amicus Curiae* 9. When the Federal Communications Commission tried to ensure that cell phones would be able to provide their current location automatically to 911 operators, the threat of infringement litigation delayed the deployment of technologies designed to comply with that requirement. Narechania, Patent Conflicts, 103 Geo. L. J. 1483, 1498–1501 (2015). And when Congress enacted statutes requiring the examination of electronic passports at airports, the Government faced the threat of an infringement suit because airlines could not "comply with [their] legal obligations" without engaging in activities that would allegedly infringe an existing patent. *IRIS Corp.* v. *Japan Airlines Corp.*, 769 F. 3d 1359, 1362 (CA Fed. 2014); see *id.*, at 1363 (concluding that the Government may be sued based on the infringing activities of airlines).

I express no view on the merits of these actions. I simply point out that infringement suits against the Government can threaten to injure Government interests even absent the threat of injunctive relief. That fact runs counter to the majority's efforts to find an explanation for *why*

Congress would have wanted to deny Government agencies the ability to invoke the speedier administrative procedures established by the America Invents Act.

\*    \*    \*

That, in my view, is the basic question: Why? Government agencies can apply for and obtain patents; they can maintain patents; they can sue other parties for infringing their patents; they can be sued for infringing patents held by private parties; they can invoke certain defenses to an infringement lawsuit on the same terms as private parties; they can invoke one of the pre-existing administrative procedures for challenging the validity of a private party's patents; and they can be forced to defend their own patents when a private party invokes one of the three procedures established by the America Invents Act. Why, then, would Congress have declined to give federal agencies the power to invoke these same administrative procedures?

I see no good answer to that question. Here, the statutes' "purpos[es]," the "subject matter," the "context," the "legislative history," and the longstanding "executive interpretation," together with the way in which related patent provisions use the term "person," demonstrate that Congress meant for the word "person" to include Government agencies. *International Primate Protection League*, 500 U. S., at 83 (quoting *Cooper*, 312 U. S., at 605). I would affirm the Federal Circuit's similar conclusion.

Consequently, with respect, I dissent.