## Board of Councilmen of City of Frankfort et al. v. Commonwealth et al.

(Decided May 3, 1932.)

F. M. DAILEY and J. P. HANRAHAN for appellants.

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

EDWARD C. O'REAR and ALLEN PREWITT for appellees.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The question presented is whether the provisions of an ordinance of the city of Frankfort, Ky., regulating the sale and inspection of milk, applies to the delivery of milk to the state institutions located within the city.

The city of Frankfort, in October, 1926, adopted a standard milk ordinance recommended by the United States public health service and approved by the state board of health of Kentucky.

A section of the ordinance makes it unlawful for any person, without a valid permit from the city health officer, to bring or to receive into the city of Frankfort for sale, or to sell, or to offer for sale, or to have in possession, any milk products defined by the ordinance. The ordinance contains certain exceptions not necessary to

enumerate. A summons was issued by the judge of the police court of the city of Frankfort, directing W. W. Greathouse and Roy Tilton to answer a charge of delivering milk in the city of Frankfort without a permit from the city health officer. Thereupon the commonwealth of Kentucky, on relation of the state purchasing commission, and Perry B. Gaines, individually, instituted this action against the board of councilmen and the city officials charged with the duty of enforcing the ordinance to enjoin the prosecution of the case, or other similar cases.

The state penitentiary is located within the corporate limits of the city of Frankfort. The state purchasing commission has entered into a contract with Perry B. Gaines to supply milk at the prison. Gaines operates a large dairy farm in Carroll county, and the milk is delivered at the state institution as specified in the contract. Greathouse and Tilton were engaged in carrying out the contract, and were not delivering milk for private sale or for consumption by the general public. The circuit court granted the relief sought, and enjoined the city officials from interfering with the delivery of milk to the state institutions. The board of councilmen and city officials have prosecuted an appeal.

The validity of the ordinance is not assailed (City of Owensboro v. Evans, 172 Ky. 831, 189 S. W. 1153), but its application to state institutions located within the city is denied. Section 254 of the Constitution of the state provides: ''The Commonwealth shall maintain control of the discipline, and provide for all supplies, and for the sanitary condition of the convicts, and the labor only of convicts may be leased.'' It will be seen that the duty of providing supplies and caring for the sanitary condition of the convicts is imposed upon the commonwealth. Ample provision has been made by law for the discharge of the duties thus imposed. Ky. Stats., sec. 3990-4 and chapter 16, sec. 216a-1 et seq.

The charter of cities of the third class, to which Frankfort belongs, contains a delegation of police power, authorizing the adoption of regulations to secure and to protect the general health, comfort, convenience, morals, and safety of the people, and to provide for and to regulate the inspection of all milk, butter, lard, and other provisions. Ky. Stats., secs. 3290-16 and 3290-21. But there is no express provision purporting to delegate to a city

of the third class any authority to make regulations affecting the management, maintenance, or operation of the state institutions. It is a rule of construction that general authority conferred upon one agency of the government will not be construed as embracing power to impose burdens upon the property or operations of other governmental agencies. City of Mt. Sterling v. Montgomery County, 152 Ky. 637, 153 S. W. 952, 44 L. R. A. (N. S.) 57. Such authority must be expressly given. The police power of a city to regulate the construction of buildings, and to prohibit the construction or maintenance of unsafe buildings, and buildings without adequate means of escape in case of fire, is undoubted, and expressly conferred upon cities of the third class Section 3290-25, Ky. Stats. But this court has held that a valid city ordinance requiring all buildings within the municipality three or more stories in height to be equipped with fire escapes had no application to a state institution for the blind located within the city. The reasoning of the opinion is that one instrumentality of the state with power to perform certain functions cannot exercise such functions against the property or operations of a separate governmental agency. Kentucky Institution for the Blind v. City of Louisville, 123 Ky. 767, 97 S. W. 402, 404, 30 Ky. Law Rep. 136, 8 L. R. A. (N. S.) 553. The court said:

"The principle is that the state, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control." Cf. Salt Lake City v. Board of Education, 52 Utah, 540, 175 P. 654, 657.

The state in pursuance of a mandate of the Constitution has made provision for the management and control of state institutions located within the city of Frankfort. There is no express provision of law conferring upon the city any right to superimpose additional or any regulations upon the internal management of the prison, and it is clear from the authorities cited that the ordinance of the city, even though valid within its sphere, has no application to the state governmental functions controlled by a separate and distinct authority. We see no room for distinction between a case concerning the

buildings or the property of the institution and one relating to service or supplies to the inmates thereof. The necessity for self-preservation by the city is no greater than like necessity for the state. Indeed, the latter embraces the former. The regulations for the health of the wards of the state cannot be presumed to be inadequate, and the record manifests no menace to the safety of the city in permitting the present arrangements to prevail. The remedy, if one is needed, rests with the legislative power of the state. Essentially and intrinsically the state prisons are matters of state, and not of local jurisdiction. In caring for the wards of the state, while confined in state institutions, the state is the unit, and the Legislature is the source of power as well as the repository of duty. The authority is not naturally or necessarily a distributive one to be exercised by local agencies, but it is a central and single power vested in the General Assembly. That branch of the government must determine what is necessary for the health and safety of the prisoners within the care of the commonwealth, as well as what is needed for the protection and preservation of the people of the cities or vicinities affected.

The judgment is affirmed.