# THE ATTORNEY GENERAL
# OF TEXAS
ATTORNEY GENERAL


January 4, 1968

Hon. J. K. Williams
Commissioner, Coordinating
  Board
Texas College and Univer-
  sity System
Sam Houston Office Bldg.
Austin, Texas 78701

Dear Mr. Williams:

Opinion No. M-182

Re: Whether the governing
    boards of junior college
    districts are required
    to take out building
    permits on the construc-
    tion of buildings of the
    district and related
    questions.

       In your request for an opinion on the above subject matter, you ask the following questions:

> "1. Does a municipality have legal author-
> ity to impose building restrictions on a public
> junior college district?
>
> "2. Is a public junior college district
> required to obtain a building permit from a
> municipality?
>
> "3. Is a public junior college district
> required to pay a municipality a fee for a
> building permit?"

       In Port Arthur Ind. Sch. Dist. v. City of Groves, 376 S.W.2d 330 (Tex.Sup. 1964), it was held that the buildings erected by an independent school district are subject to the regulatory ordinances of the municipality in which they are located. This result was the consequence of the court's conclusions at page 333 of the opinion:

> ". . . [I]ndependent school districts . . .
> are independent political entities and we will
> not classify their property as state property.
> . . . The Legislature, in providing that local
> school boards shall contract for the erection
> of school buildings and superintend the con-
> struction of same, made no provision whatsoever
> that they should regulate, supervise or control
> in any manner the building of school buildings

- 870 -

and provided for no safety regulations for the protection of the occupants or the property of others in the vicinity of the school buildings." (Emphasis added.)

Accord, School District of Philadelphia v. Zoning Board of Adjustment, City of Philadelphia, 417 Pa. 277, 207 A.2d 864 (1965), wherein the Supreme Court of Pennsylvania held that a municipality had the power to regulate by means of zoning ordinances the construction of public school buildings by the school district within the municipal limits.

It is a well established rule that municipal ordinances regulating the construction, repair and equipment of buildings do not apply to projects undertaken by the state or its agents on property owned by the state. Board of Regents v. City of Tempe, 88 Ariz. 299, 356 P.2d 399 (1960); Kentucky Institute For Education of Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402 (1906); Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237, 113 A.2d 658 (1955); County of Westchester v. Village of Mamaroneck, 22 App.Div.2d 143, 255 N.Y.S.2d 290 (1964), affirmed 16 N.Y.2d 940, 212 N.E.2d 442 (1964); Davidson County v. Harmon, 200 Tenn. 575, 292 S.W.2d 777 (1956); City of Charleston v. Southeastern Const. Co., 134 W.Va. 666, 64 S.E.2d 676 (1950); accord, Ex parte Means, 14 Cal.2d 254, 93 P.2d 105 (1939); Newton v. City of Atlanta, 189 Ga. 441, 6 S.E.2d 61 (1939); City of Frankfort v. Commonwealth, 243 Ky. 633, 49 S.W.2d 548 (1932).

The rationale of these decisions is the ultimate right of the state to act with regard to property which the state owns and controls without interference from, or regulation by, a subordinate entity which was created by the state and derives all of its power and authority from the state.

". . . [T]he state will not be presumed to have waived its right to regulate its own property, by ceding to the city the right generally to pass ordinances of a police nature regulating property within its bounds. . . . The principle is that the state, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control. The municipal government is but an agent of the state - not an independent body. It governs in the limited manner and territory that is expressly or by necessary

implication granted to it by the state.
It is competent for the state to retain
to itself some part of the government
even within the municipality, which it
will exercise directly, or through the
medium of other selected and more suit-
able instrumentalities. How can the city
have ever a superior authority to the
state over the latter's own property,
or in its control and management? From
the nature of things it cannot have."
Kentucky Institute for Education of
Blind v. City of Louisville, 123 Ky. 767,
97 S.W. 402, 404 (1906).

Reviewing the above cited authorities together with
the provisions of Article 2615g, Vernon's Civil Statutes, es-
tablishing the University of Houston as a state institution
of higher learning, this office held in Attorney General's
Opinion C-690 (1966):

"Municipal ordinances regulating the loca-
tion, size, design, height, construction, equip-
ping, and inspection of new buildings or the re-
modeling and repair of existing buildings, do
not apply to projects undertaken by the state
on property owned by the state. The Universi-
ty of Houston is a state institution of higher
learning, created and controlled by the state.
Its property is state property, therefore, the
erection, remodeling, or repair of buildings
by the University of Houston is not regulated
by the ordinances of the municipalities within
which they are located."

In discussing the City of Groves case, supra, we
observed in Opinion C-690:

"In Port Arthur Ind. Sch. Dist. v. City
of Groves, supra, the court expressed the
fear that buildings erected by independent
school districts would constitute a threat
to the health and safety of the community
if they were not regulated by municipal
building ordinances. We do not view the
prospect of the development and expansion
of the physical facilities of the various
state institutions of higher learning, un-
restrained by the regulatory ordinances of
the various municipalities within which

such institutions may be located, as a
threat to the safety and health of the
community. The state is the ultimate au-
thority responsible for the protection of
the health, safety and welfare of its
citizens and we will not presume that
the state or the designated governing
boards of its institutions of higher
learning will, in the pursuit of educa-
tional excellence, so plan and expand
the facilities of these institutions
as to be unmindful of the health and
safety of the community involved. The
following statement of the court in the
City of Tempe case, supra, is partic-
ularly appropriate to this aspect of
the question:

"'There is nothing to suggest that
the Board will supervise the University's
construction program with less concern
for the public welfare than would the
City. Indeed, we may well assume that
this Court's determination of the scope
of the Board's duties will be followed by
an appreciation of the responsibilities
generated thereby. It is thus unnecessary
for us to consider or enumerate the judicial
and other remedies available to insure that
the Board, or any other state or municipal
agency, performs its duties in a manner
consistent with the health, safety and
general welfare of the people of this
State.

"'We hold that the City of Tempe may
not apply its building codes and regulations
to Arizona State University.' 356 P.2d 407

"Therefore, you are hereby advised that
the municipal ordinances regulating location,
construction, design, equipping and inspec-
tion of buildings and structures within such
municipalities do not apply to projects under-
taken by the University of Houston on land
owned by such institution. Our conclusion
upon this question is also supported by
Attorney General's Opinions V-977 (1949)
and C-301 (1964), both of which are hereby
affirmed."

In view of the above authorities, the answer to your questions depends on whether property owned and controlled by junior colleges is to be classified as state property; and in order to determine the answer to this question, it becomes important to determine the nature of junior colleges as well as applicable statutory provisions governing the construction of junior college facilities. In Shepherd v. San Jacinto Junior College District, 363 S.W.2d 742 (Tex.Sup. 1963), the court in discussing the nature of junior college districts made the following observation at page 744:

"Some difficulty of classification has arisen with reference to junior colleges and the regional districts supporting them. Undoubtedly the framers of the Texas educational system envisioned a system of schools extending from those of an elementary grade to those of a university level, that is, elementary schools, secondary schools or high schools and colleges and universities. The junior colleges, developed for the most part since 1929, are sandwiched in, so to speak, between the high schools on one hand and the colleges or universities on the other hand. In certain respects, the junior college is what its name implies, that is, a school which is above the high school level yet one whose highest grade is below the educational level required for a degree from a university. Yet, as pointed out by one of the briefs on file here, it would not be inappropriate to refer to the districts which support such schools as 'junior college districts,' 'advanced independent school districts' or 'graduate high school districts.' The point of this is that junior colleges and their districts may in some instances be regarded as colleges and in other instances as schools in the nature of advanced high schools. The Junior College Act itself makes numerous references to independent school districts when delineating the powers and operations of a junior college district.

"The Texas junior college history bears some relation to the experience of other states with secondary schools, that is, high schools or college preparatory schools." (Emphasis added.)

Sections 1 and 2 of Article 2815r-2, Vernon's Civil Statutes, provide:

"Section 1. The governing boards of all junior college districts heretofore or hereafter organized under the laws of the State of Texas are hereby severally authorized and empowered, each for its respective institution or institutions, to construct, acquire and equip, on behalf thereof, buildings and other structures and additions to existing buildings and other structures and to acquire land for said additions, buildings and other structures in any manner authorized by law, if deemed appropriate by said governing boards. Said constructions, equipping and acquisition may be accomplished in whole or in part with proceeds of loans obtained from any private or public source. The said governing boards are also severally authorized to enter into contracts with municipalities and school districts for the joint construction of said facilities.

"Sec. 2. The buildings and structures and additions to buildings and structures constructed pursuant to the authority contained in this Act, together with the equipment therein shall be of types and for purposes which the authorizing governing board shall deem appropriate and shall deem to be for the good of the institution, provided such governing board shall approve the total cost, types, plans and specifications of such construction and equipment."

In view of the foregoing, we believe that property belonging to junior college districts is not to be classified as State property as it is governed by the rule announced in City of Groves case rather than the rule announced in the City of Tempe case. Therefore, you are advised that a municipality has legal authority to impose building restrictions on a public junior college district and that a public junior college district is required to obtain building permits from a municipality, and pay the municipality a fee therefor when the municipality had duly promulgated such an ordinance in accordance with applicable statutory provisions in furtherance of powers granted to such city by the Legislature.

S U M M A R Y

A municipality has legal authority to impose building restrictions on a public junior

college district and a public junior college district is required to obtain building permits from a municipality, and pay the municipality a fee therefor when the municipality has duly promulgated an ordinance providing therefor, in accordance with applicable statutory provisions and in furtherance of powers granted to such city by the Legislature.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE
Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
W. V. Geppert
Arthur Sandlin
James Broadhurst
John Banks

A. J. CARUBBI, JR.
Staff Legal Assistant