RENDERED:  NOVEMBER 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0961-MR


FRIENDS OF LOUISVILLE PUBLIC ART, LLC;
CHARLES NICHOLAS MORRIS; DEANNA M. O'DANIEL;
GERALD R. TONER; JAMES PRICHARD; LOUISVILLE
HISTORICAL LEAGUE, INC.; MARK THOMPSON;
MARTINA KUNNECKE; AND STEVE WISER          APPELLANTS


|    | APPEAL FROM JEFFERSON CIRCUIT COURT |
| --- | --- |
| v. | HONORABLE JENNIFER WILCOX, JUDGE |
|    | ACTION NO. 19-CI-003550 |


LOUISVILLE/JEFFERSON COUNTY METRO
HISTORIC LANDMARKS AND PRESERVATION
DISTRICTS COMMISSION; LOUISVILLE/JEFFERSON
COUNTY METRO GOVERNMENT; AND LOUIVILLE
METRO GOVERNMENT CHEROKEE TRIANGLE
ARCHITECTURAL REVIEW COMMITTEE          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

CALDWELL, JUDGE: The above-captioned appellants (collectively referred to herein as the "Friends") appeal an order of the Jefferson Circuit Court denying their request for an injunction to force appellee Louisville/Jefferson County Metro Government ("LMG") to return a statue of John B. Castleman to where the statue was formerly located. Upon review, we affirm.

## BACKGROUND

This appeal is a continuation of what was before our Supreme Court in *Friends of Louisville Public Art, LLC v. Louisville/Jefferson County Metro Historic Landmarks and Preservation Districts Commission*, 671 S.W.3d 209 (Ky. 2023). In sum, Louisville Mayor Greg Fischer announced in August 2018 that LMG intended to remove the statue of John B. Castleman from its location in the Historic Cherokee Triangle Preservation District. It is undisputed that LMG owns the statue in question. Prior to removing it, LMG acted in conformity with §§ 32.250 through 32.263 of its ordinances (collectively referred to herein as the "Landmarks Ordinances") by applying for a "certificate of appropriateness" from the Cherokee Triangle Architectural Review Committee ("ARC"). As our Supreme Court explained in its prior review of this matter:

> Under LOUISVILLE/JEFFERSON CNTY., KY.,
> METRO GOV'T ORDINANCES ["LMCO"] § 32.252,
> [LMG] created the Cherokee Triangle Preservation
> District as a Historic Preservation District. The
> Preservation Ordinances provide that before any exterior
> alteration or demolition, including the moving, of a

-2-

structure may occur, a certificate of appropriateness is required. Ordinance § 32.252(D), § 32.257(B). These ordinances are authorized under Kentucky Revised Statute ("KRS") 82.026, which permits "[t]he legislative body of any city [to] enact ordinances establishing local historic preservation commissions[.]"

*Id*. at 211 n.2.

The ARC denied LMG's application for a certificate of appropriateness. Afterward, LMG appealed to the Historic Landmarks and Preservation Districts Commission ("Landmarks Commission"), per LMCO § 32.257(K). Upon consideration, the Landmarks Commission reversed the ARC and approved LMG's application.

Contesting the Landmarks Commission's decision, the Friends subsequently filed a complaint and appeal with the Jefferson Circuit Court, per LMCO § 32.263. The circuit court affirmed. The Friends appealed to this Court, which similarly affirmed. The Friends then sought and were granted discretionary review from our Supreme Court, which ultimately reversed and remanded to the circuit court with directions to set aside the Landmark Commission's decision as arbitrary. In closing, the Court stated:

[W]e underscore that we express no opinion as to the fate of the statue in question. That is ultimately a decision for the citizens of Louisville/Jefferson County. Those citizens, however, having created a process for that decision must abide by that process, and must not act arbitrarily in the process.

*Friends of Louisville Public Art, LLC*, 671 S.W.3d at 215.

Shortly after remand to the Jefferson Circuit Court, the Friends then moved for injunctive relief. LMG had removed the Castleman statue from the Historic Cherokee Triangle Preservation District during the pendency of the Supreme Court proceedings under the auspices of its invalidated "certificate of appropriateness," and the Friends wanted the circuit court to force LMG to put the statue back until LMG reapplied for and secured a new and valid certificate.

In response, LMG stated it had no intention of reapplying for a new certificate of appropriateness, but that it also had no intention of returning the statue back to where it had been, either. Further, LMG claimed it would be futile for the circuit court to grant the Friends their requested injunctive relief, arguing (for the first time) that it enjoyed sovereign immunity from complying with its own Landmarks Ordinances.

The circuit court disposed of this litigation in its entirety by setting aside the Landmarks Commission's decision and denying the Friends' motion for an injunction. In its order to that effect, the circuit court explained that the "law of the case" doctrine merely required it to set aside the Landmark Commission's decision, and that its order did exactly that. The circuit court rejected the notion that the "law of the case" or LMG's litigation conduct barred LMG from asserting sovereign immunity this late into the proceedings; and it agreed that LMG was

immune from complying with the Landmarks Ordinances, and that it would therefore be futile to grant the Friends' request for injunctive relief. This appeal followed.

## STANDARD OF REVIEW

The focus of this appeal is upon the propriety of the court-ordered injunctive relief requested by the Friends. Our standard of review is set forth in Kentucky Rule of Civil Procedure ("CR") 52.01, which provides:

> [I]n granting or refusing temporary injunctions or permanent injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action . . . . Findings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . .

To determine if findings are clearly erroneous, we look to see if they are without adequate evidentiary support or occasioned by erroneous application of the law. *See Rogers v. Lexington-Fayette Urban Cnty. Gov't*, 175 S.W.3d 569, 571 (Ky. 2005) (citation omitted). The determination of whether governmental immunity applies to a party is also a question of law, and, therefore, reviewed *de novo*. *University of Kentucky v. Regard*, 670 S.W.3d 903, 911 (Ky. 2023).

## ANALYSIS

The issues presented in this appeal largely involve the application of law to undisputed facts. In that vein, the Friends posit two overarching arguments

in support of why, in their view, the circuit court erred in rejecting their motion for injunctive relief: (1) the Landmarks Ordinances applied to LMG and accordingly waived any sovereign immunity LMG may have had; and (2) LMG, through its conduct in litigating this matter, otherwise forfeited any claim of sovereign immunity.

Their first argument is incorrect. For context, we begin with a general rule:

> [T]he state, when creating municipal governments, does not cede to them any control of the state's property situated within them, nor over any property which the state has authorized another body or power to control.
>
> . . .
>
> This is not to say that it is impermissible for the Commonwealth to grant to cities the authority to inspect and control the construction of state buildings. But it is clear that such power, when given, must be specifically delegated.
>
> . . .
>
> The rule of construction to be applied is: Statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights, or remedies, unless the intention of the legislature to effect this object is clearly expressed.

*City of Bowling Green v. T & E Elec. Contractors, Inc.*, 602 S.W.2d 434, 435-36 (Ky. 1980) (internal quotation marks and citations omitted).

In other words, the Commonwealth and its instrumentalities maintain *sovereignty* over their property. And "general authority conferred upon one agency of the government will not be construed as embracing power to impose burdens upon the property or operations of other governmental agencies." *Board of Councilmen of City of Frankfort v. Commonwealth*, 243 Ky. 633, 49 S.W.2d 548, 549 (1932). Illustrating this rule and its application, it was held in *Kentucky Institution For The Blind v. City of Louisville*, 123 Ky. 767, 97 S.W. 402 (1906), that absent express statutory authorization, an otherwise valid city ordinance requiring the presence of fire escapes on tall buildings could not be applied to a state-owned institution located within the city limits. *In Board of Councilmen of City of Frankfort*, 49 S.W.2d 548, applying the same rule, it was held that a city ordinance regulating the sale of milk could not be applied to the sale of milk to a state prison located within the city. In *City of Bowling Green*, 602 S.W.2d 434, it was held that a statute granting cities the power to regulate public buildings did not cede to a city jurisdiction to impose a local building code on state buildings located in the city. And, in *Lexington-Fayette Urban County Board of Health v. Board of Trustees of the University of Kentucky*, 879 S.W.2d 485 (Ky. 1994), it was held that this general rule of construction also applies to statutory entities created by urban-county governments; and that because the General Assembly enacted no clear statute granting authority to the appellant Board of Health to enact and

enforce local health laws or local regulations against state agencies, the Board of Health lacked any such authority.

Here, the general rule set forth above applies with equal force. Specifically, LMG is an instrumentality of the state and accordingly its sovereignty may only be waived by the express language or overwhelming implication of a statute. *See Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 831 (Ky. 2021). Also, the Landmarks Commission is a statutory entity created by LMG. *See Bd. of Trs. of the Univ. of Ky.*, 879 S.W.2d 485.

As for what the Friends cite in support of their argument that LMG's sovereignty was waived regarding its property and made subject to the control or regulation of the Landmarks Commission, the only authorities they point to are: (1) KRS 82.026; and (2) the Landmarks Ordinance itself, which is based upon that statute.[1] In full, KRS 82.026 provides:

---

[1] As discussed *supra*, our Supreme Court explained that the ordinances at issue in this matter were "authorized under" KRS 82.026. *See Friends of Louisville Public Art*, *LLC*, 671 S.W.3d at 211 n.2. However, LMG claims – without authoritative support, and contrary to what is asserted by the Friends – that its ordinances at issue in this appeal were *also* promulgated under the authority of KRS 100.203(1)(e); and that KRS 100.361(2) is therefore dispositive regarding its sovereign immunity because it provides in relevant part that "Nothing in this chapter shall impair the sovereignty of the Commonwealth of Kentucky over its political subdivisions. Any proposal affecting land use by any department, commission, board, authority, agency, or instrumentality of state government shall not require approval of the local planning unit."

For purposes of our analysis only, we will assume the ordinances at issue were *only* authorized under KRS 82.026. But, it is important to note that urban-county governments derive authority to enact preservation and historic district overlay and use zoning ordinances from a variety of statutes, including KRS 67.083, 67A.060(1), 67A.070, 82.026 and 100.203(1)(e). Indeed, *Lexington* – which also has an urban-county government – cites each of those provisions

-8-

The legislative body of any city *may* enact ordinances establishing local historic preservation commissions for the purpose of qualifying for historic preservation funding. The city shall comply with the 1966 National Historic Preservation Act, as amended, in order to meet the requirements for an adequate and qualified historic preservation commission, and the legislative body shall provide:

> (1) A system for surveying and inventorying historic properties;

> (2) Procedures for adequate public participation in the local historic preservation program, including the process of recommending properties to the national register;

> (3) The enforcement of appropriate state and local legislation for the designation and protection of historic properties; and

> (4) Such other responsibilities as may be required by the 1966 National Historic Preservation Act, as amended.

(Emphasis added) (footnote omitted).

To be clear, the Friends merely cite this statute. They do not analyze it – or the cited "1966 National Historic Preservation Act" – in any depth. However, KRS 82.026 does not contain an express waiver of sovereignty or

---

in its zoning code in support of the establishment of its own historic preservation commission. *See* Lexington-Fayette County Zoning Ordinance, Art. 13, § 13-4, available at: https://codelibrary.amlegal.com/codes/lexingtonfayettecoky/latest/lexingtonfayettecoky_zone/0-0-0-16614 (last visited Aug. 8, 2024) (this Court may take judicial notice of these public documents. *Fox v. Grayson*, 317 S.W.3d 1, 18 n.82 (Ky. 2010)).

overwhelmingly imply one.  Rather, it provides that the creation of a local preservation commission (*i.e.*, the Landmarks Commission) is *permissive* and confers *general authority* to enact ordinances and enforce "appropriate state and local legislation for the designation and protection of historic properties[.]"  *Id*. Absent any argument from the Friends, we are also unwilling to entertain that "the 1966 National Historic Preservation Act" presented any impediment to LMG's right to remove the Castleman statue, either.[2]  It is not the responsibility of this

---

[2] While it is beyond the scope of the arguments presented herein, some discussion of the National Historic Preservation Act ("NHPA") is warranted.  In summary:

> Congress enacted the National Historic Preservation Act to encourage historic preservation in the United States in federal and federally-assisted projects.  *Friends of St. Frances Xavier Cabrini Church v. FEMA*, 658 F.3d 460, 462 (5th Cir. 2011).  The NHPA "requires each federal agency to take responsibility for the impact that its activities may have upon historic resources."  *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 224 (5th Cir. 2006).  Section 106 of the NHPA, now codified at 54 [United States Code] U.S.C. § 306108, prohibits federal agencies from approving the expenditure of federal funds on an undertaking without taking into account "the effect of the undertaking on any historic property."  Section 106 upholds the NHPA's objectives "neither by forbidding the destruction of historic sites nor by commanding their preservation, but instead by ordering the government to take into account the effect any federal undertaking might have on them."  *Coliseum Square Ass'n*, 465 F.3d at 225.  The NHPA is procedural in nature.  *Id*.  "It does not itself require a particular outcome, but rather ensures that the relevant federal agency will, before approving funds or granting a license to the undertaking at issue, consider the potential impact of that undertaking on surrounding historic places."  *Id*. (quoting *Bus. & Residents All. of E. Harlem v. Jackson*, 430 F.3d 584, 591 (2d Cir. 2005)).  When a government agency receives an application for a federally-assisted project, *i.e.*, one in which federal funds will be used, the agency official evaluates the proposed federal action to determine whether it is an "undertaking" and, if so, whether it is the type of activity that has the potential to affect historic properties.  *Friends of St. Frances Xavier Cabrini Church*, 658 F.3d at 463 (citing 36 [Code of Federal Regulations] C.F.R. § 800.3(a)).  The term "undertaking" means a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a federal agency.  54 U.S.C. § 300320; 36 C.F.R. § 800.16(y).  "If

-10-

Court to construct a party's arguments or search the record to find support for a party's contentions, even assuming support exists. *See Young v. Newsome*, 462 S.W.2d 908, 910 (Ky. 1971); *Sharp v. Sharp*, 491 S.W.2d 639, 644-45 (Ky. 1973).

---

the undertaking is a type of activity that does not have the potential to cause effects on historic properties, . . . the agency official has no further obligations under section 106." 36 C.F.R. § 800.3(a)(1). If the undertaking might affect historic properties, the agency begins the four-step review process mandated under section 106 of the NHPA. *Friends of St. Frances Xavier Cabrini Church*, 658 F.3d at 463.

*Monumental Task Comm., Inc. v. Foxx*, 240 F.Supp. 3d 487, 495-96 (E.D. La. 2017).

The Supreme Court of North Carolina, faced with an argument stemming from the NHPA and factual circumstances analogous to those presented in the case at bar, cogently explained:

[P]laintiff has failed to explain how the placement of the old courthouse property on the National Register of Historic Places had the effect of precluding the removal or relocation of the monument. In the event that plaintiff is seeking to invoke the National Historic Preservation Act, P.L. 89-665, now codified at 54 U.S.C. 300101 *et seq.*, the only potentially relevant provision is 54 U.S.C. § 306108, which requires federal agencies, "prior to the approval of the expenditure of any Federal funds on [any Federal or federally assisted] undertaking or prior to the issuance of any license, [to] take into account the effect of the undertaking on any historic property." According to well-established federal law, the statutorily required review process "applies by its terms only to federally funded or federally licensed undertakings." *Nat'l Min. Ass'n v. Fowler*, 324 F.3d 752, 760 (D.C. Cir. 2003) (quoting *Sheridan Hist. Ass'n v. Christopher*, 49 F.3d 750, 755 (1995)) (emphasis in Sheridan). In *Monumental Task Committee, Inc. v. Foxx*, a federal district court concluded, on facts similar to those at issue here, that, unless efforts by the City of New Orleans to remove a controversial monument were "either federally funded or federally licensed, [§ 306108] does not apply." 240 F. Supp. 3d 487, 496 (E.D. La. 2017). As a result of the fact that plaintiff "[has] not [alleged or] argued, let alone presented any evidence, that removal of the [monument] [was] federally funded, permitted, approved, or licensed," "[§ 306108] is inapplicable to the removal of the [monument]." *Id.*

*United Daughters of the Confederacy v. City of Winston-Salem by and through Joines*, 383 N.C. 612, 881 S.E.2d 32, 58-59 (2022).

That aside, even if KRS 82.026 could be read to authorize LMG to enact ordinances in derogation of its own sovereignty and subject its property to the control or regulation of the Landmarks Commission, nothing of the sort occurred with respect to the Landmarks Ordinances. The Friends' argument to the contrary is based entirely upon LMCO § 32.252(D), which they argue obligated LMG to secure a "certificate of appropriateness" from the Landmarks Commission before removing the Castleman statue. That ordinance provides:

> No *person* shall make any exterior alteration to any structure or site designated an individual landmark or to any site or structure located within a district without obtaining a certificate of appropriateness, issued without cost, as provided in this subchapter.

(Emphasis added.)

The Friends assert that the Castleman statue qualifies as a "structure located within a district" for purposes of LMCO § 32.252(D). They note that removing a structure from a district qualifies as an "exterior alteration."[3] They note that KRS 418.085 – which defines "person" for purposes of Kentucky's Declaratory Judgment Act, KRS 418.040 *et seq.* – indicates that a "municipal corporation" can qualify as a "person." Proceeding from there, and to quote their

_____

[3] For purposes of the Landmarks Ordinances, LMCO § 32.251 defines "exterior alteration" as "[a]ny change to the exterior of a structure or to a site, including *demolition* and new construction, except those alterations set out in § 32.256(A)." (Emphasis added.) "Demolition," in turn, is also defined in that section as "[t]he destruction of the whole or any part of a structure *or the moving* of any structure or portion thereof." (Emphasis added.)

brief before this Court, the Friends then conclude that "[t]he definition of 'person' in KRS 418.085 has always been followed by the Landmarks Commission. Thus, Louisville Metro, as a 'person' under the Landmarks Ordinance, must follow the requirements of that ordinance and its process."

The gaping hole in the Friends' legal analysis of the Landmarks Ordinances is their unsupported assertion that the definition of "person" applicable to the Declaratory Judgment Act applies to those ordinances. To be clear, it does not. Pursuant to LMCO § 10.06, the word "person" is generally defined throughout LMG's ordinances as follows:

> (B)   For the purpose of this Code, the following definitions shall apply unless the context clearly indicates or requires a different meaning.
>
> . . .
>
> PERSON. Extends to and includes person, persons, firm, corporation, co-partnership, trustee, lessee, or receiver. Whenever used in any clause prescribing and imposing a penalty, the terms PERSON or WHOEVER as applied to any unincorporated entity shall mean the partners or members thereof, and as applied to corporations, the officers or agents thereof.

This is the definition of "person" that applies to the Landmarks Ordinances. With that in mind, there are three reasons why LMG is not considered a "person" for purposes of the Landmarks Ordinances. First, notably absent from

-13-

this definition is any reference to a "municipal corporation," LMG, or any other body politic.

Second, taken in context with other provisions of the Landmarks Ordinances, this definition does not clearly indicate or require an interpretation of "person" consistent with what is urged by the Friends. For example, LMCO §§ 32.257(K) and 32.263(A) indicate that not every "entity" is a "person."[4] Considering LMG to be a "person" would also lead to absurdity: The penalty for a "person" who violates any provision of the Landmarks Ordinances is a civil fine, per LMCO § 32.262(A); pursuant to LMCO § 32.262(B), "[t]he *Metro Government* shall possess a lien on the property of the *person* committing the violation for all fines, penalties, charges and fees imposed pursuant to [LMCO § 32.262(A)]" (emphasis added); thus, if LMG were considered a "person" capable of violating this ordinance, it would effectively be obligated to fine itself and place liens upon its own property.

---

[4] An ordinance, like a statute, "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Travelers Indem. Co. v. Armstrong*, 565 S.W.3d 550, 563 (Ky. 2018) (citation omitted). With that in mind, LMCO § 32.257(K) provides in relevant part that "Any applicant [for a certificate of appropriateness], whose application is denied by the staff or a committee, and any *person* or *entity* claiming to be injured or aggrieved by any decision made by the staff or a Committee, may appeal the decision to the Commission . . . ." (Emphasis added.) Similarly, LMCO § 32.263(A) provides in relevant part that "an appeal from the Commission shall be taken by any *person* or *entity* claiming to be injured or aggrieved by the final action of the Commission . . . ." If every "entity" qualified as a "person," the word "entity" would be superfluous.

Third, and perhaps most importantly, our rules of legal interpretation do not permit us to infer that LMG falls within the LMCO § 10.06 definition of "person." This is so because "[t]he state, or the public, is not to be considered as within the purview of a statute, however general and comprehensive the language of such act may be, unless expressly named therein, or included by necessary implication." *Commonwealth v. Allen*, 235 Ky. 728, 32 S.W.2d 42, 43 (1930); *see also Return Mail, Inc. v. United States Postal Serv.*, 587 U.S. 618, 626-27, 139 S. Ct. 1853, 1862, 204 L. Ed. 2d 179 (2019) (internal quotation marks and citations omitted) (explaining "[i]n the absence of an express statutory definition, the Court applies a longstanding interpretive presumption that 'person' does not include the sovereign," and that where a legislative enactment "provides that the word "'person' . . . include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals[,]" the Court would not infer that the definition encompasses the Federal Government).

In sum, LMG is entitled to sovereignty over the use of its property absent express legislation to the contrary. The Friends point to no express legislation waiving LMG's sovereignty. Accordingly, their argument that LMG subjected its property to the control or regulation of the Landmarks Commission lacks merit.

We now proceed to the Friends' second argument. They contend that LMG, through its conduct in litigating this matter, forfeited any claim of sovereign immunity. In support, they cite: (1) the "law of the case" doctrine; and (2) what they characterize as LMG's "arbitrary and hypocritical action" of acting in conformity with the notion that the Landmarks Ordinances applied to it.

However, the "law of the case" doctrine does not apply. To explain, the law-of-the-case doctrine is "an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *B.S.S. v. K.S.*, 599 S.W.3d 858, 862 (Ky. 2020) (quoting *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956)). "[O]n remand from a higher court a lower court must obey and give effect to the higher court's express or necessarily implied holdings and instructions." *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010). Proper application of the law-of-the-case doctrine "is a question of law to be reviewed *de novo*." *University Medical Center, Inc. v. Beglin*, 432 S.W.3d 175, 178 (Ky. App. 2014).

In *St. Clair v. Commonwealth*, 455 S.W.3d 869 (Ky. 2015), our Supreme Court explained:

> Under the law-of-the-case doctrine, an appellate court, on a subsequent appeal, is bound by a prior decision on a former appeal in the same court. The rule means that

issues decided in earlier appeals should not be revisited in subsequent ones.

*Id*. at 887 (internal quotation marks and citations omitted). The law of the case doctrine "applies to the determination of questions of law and not questions of fact." *Hardaway Management Co. v. Southerland*, 977 S.W.2d 910, 915 (Ky. 1998) (citing *Inman v. Inman*, 648 S.W.2d 847, 849 (Ky. 1982)).

Whether an issue was conclusively established as part of a prior appeal, however, necessarily requires consideration of the procedural and evidentiary posture of the case during the first appeal vis-à-vis the procedural and evidentiary posture of the case after remand. *See Lake v. Smith*, 467 S.W.2d 118 (Ky. 1971). "Where multiple appeals occur in the course of litigation, the law-of-the-case doctrine provides that issues decided in earlier appeals should not be revisited in subsequent ones when the evidence is substantially the same." *Wright v. Carroll*, 452 S.W.3d 127, 130 (Ky. 2014). "The crucial requirement is that the appellate court enters a final decision on the question rather than merely commenting on the issue." *H.R. ex rel. Taylor v. Revlett*, 998 S.W.2d 778, 780 (Ky. App. 1999).

Here, the first time LMG raised the issue of its sovereign immunity from complying with the Landmarks Ordinances was after our Supreme Court's remand of this matter to the circuit court following its review in *Friends of Louisville Public Art, LLC*, 671 S.W.3d 209. The question was never raised

-17-

beforehand. Thus, it was never commented on by any appellate court, much less decided by one. *See Revlett*, 998 S.W.2d at 780. The law-of-the-case doctrine accordingly has no application here.

As for what the Friends characterize as LMG's "arbitrary and hypocritical action" of acting in conformity with the notion that the Landmarks Ordinances applied to it, it appears – taken generously – that they are claiming LMG should be equitably estopped from asserting sovereign immunity. But that, too, is a losing argument. The question of sovereign immunity may be raised "at any time." *Louisville Metro/Jefferson County Government v. Abma*, 326 S.W.3d 1, 14 (Ky. App. 2009). Furthermore, equity has no place in this matter because sovereign immunity cannot be waived except by the General Assembly. *See* KENTUCKY CONSTITUTION § 231; *Knott County Bd. of Ed. v. Mullins*, 553 S.W.2d 852, 854 (Ky. App. 1977).

## CONCLUSION

The Friends have failed to demonstrate the Jefferson Circuit Court erred in its disposition of this case. We therefore AFFIRM.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

Stephen T. Porter
Louisville, Kentucky

BRIEF FOR APPELLEES:

Michael J. O'Connell
Jefferson County Attorney

Anne P. Scholtz
Susan M. Rivera
Assistant Jefferson County Attorneys
Louisville, Kentucky